**TOPP, INC., a Florida corporation, Plaintiff,**

v.

**UNIDEN AMERICA CORPORATION, a Delaware corporation, Defendant.**

No. 05–21698CIV.

United States District Court, S.D. Florida. Miami Division.

March 30, 2007.

Stanley H. Wakshlag, Amanda M. McGovern, and Ismael Diaz of the firm of Kenny Nachwalter, P.A., Miami, FL, Frank G. Smith, III and Jay D. Bennett of the firm of Alston & Bird, Atlanta, GA, Counsel to Defendant Uniden America.

Andres Rivero of Rivero Palmer & Mestre, P.A. Coral Gables, FL, in connection with the Magistrate's Report and Recommendation, and Jeffrey B. Crockett and Paul Schwiep of the firm of Coffee and Burlington, Miami, FL, in connection with the Order Adopting, In Part, Magistrate's

Report and Recommendation, Counsel to the Plaintiff, Topp, Inc.

### ORDER ADOPTING, IN PART, MAGISTRATE'S REPORT AND RECOMMENDATION, GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING, IN PART, DEFENDANT'S MOTION TO DISMISS

MORENO, District Judge.

THE MATTER was referred to the Honorable Andrea M. Simonton, United States Magistrate Judge for a Report and Recommendation on Defendant's Motion to Dismiss (D.E. No. 58, 59) and Defendant's Motion for Summary Judgment (D.E. No. 101). The Magistrate Judge filed a Report and Recommendation (D.E. No. 228) on *January 22, 2007.* The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections to the Magistrate Judge's Report and Recommendation present.

### I. Background

#### A. The Amended Complaint

To summarize briefly, Plaintiff Topp, Inc., ("Topp") is proceeding under a three-count Amended Complaint (DE # 41). In Count I of the Amended Complaint, Topp contends that Uniden America breached exclusive distribution agreements for the sales of new products in Latin America and used products in the United States, Canada and Latin America.

In Count II, Topp alleges that Uniden America tortiously interfered with Topp's advantageous business relationships with Lectron Radio Sales, Ltd. (Lectron), and Costco Wholesale Corporation in Mexico (Costco Mexico). The tortious interference claim as it relates to Lectron is not at issue in either the Motion to Dismiss or the Motion for Summary Judgment.

In Count III, Topp contends that over the course of Uniden America's business relationship since 1996, Uniden America continuously falsely represented to Topp that it was supplying Topp with all of the B-products it obtained in that time period, and that at the time Uniden America made those statements, Uniden America knew that the statements were false because it was skimming the best B-products off for its own benefit on resale, leaving to Topp the B-products of lesser value.

#### B. Magistrate Judge Simonton's Recommendations

Magistrate Judge Simonton, in a thoughtful and well-reasoned Report and Recommendation ("R & R"), applying Florida law, recommended that the Court grant Defendant's Motion for Summary Judgment as to all three Counts. She recommended that summary judgment be granted as to Count I because the alleged oral exclusive distributorship agreements are unenforceable under the Statute of Frauds. She also found that a breach of the September 12, 2003 written B-stock agreement was not pled in the Amended Complaint.

As to Count II, Magistrate Judge Simonton recommended that summary judgment be granted as to the Costco Mexico claims because the economic loss rule bars raising breach of contract issues as torts.

Magistrate Judge Simonton also recommended that summary judgment be granted as to Count III for two reasons. First, she found that the economic loss rule bars the tort claims. Second, pursuant to the finding in Count I that the alleged oral agreements which form the basis of the fraud claims are unenforceable, Plaintiff cannot avoid the Statute of Frauds by restating its breach of contract claim as a tort.

Finally, Magistrate Judge Simonton recommended that the Motion to Dismiss be denied as moot in light of her recommendations as to the Motion for Summary Judgment.

Defendant has no objections to the R & R. Plaintiff, however, has filed numerous objections, which the Court now addresses.

## II.  Analysis

### A.  Objection as to Choice of Law

In an objection that applies to the entire analysis of the R & R, Plaintiff contends that Texas rather than Florida law should apply to all claims.  After a hearing was held on the objections to the R & R, the Court allowed the parties to brief the issue of which states' law should apply to the claims.

The Court initially indicated at the hearing that it agreed with Magistrate Simonton's application of Florida law to both the breach of contract and tort claims.  After reviewing the briefs submitted by both parties on the choice-of-law issue, the Court still finds that Florida law applies to all claims.

### 1.  Contract Law Claims

At the outset, the Court notes that to the extent a breach of the written 2003 B-stock agreement is alleged, the parties appear to be in agreement that Texas law governs because of the choice of law provision in the contract.  Accordingly, the Court's discussion of which states' law governs is limited to the oral contract claims at issue.

Defendant Uniden vigorously asserts that because Topp has for the very first time, in its objections to the R & R argued that the Texas Statute of Frauds applies to its oral contract claims in Count I, it has waived the right to argue Texas law applies.  Topp counters that in relying on Florida law it was only responding to Uniden's Florida-based arguments and during oral argument in front of the Magistrate, it merely admitted that no one had thought about whether Florida law applied without conceding the point.

After thoroughly reviewing the record presented to the Magistrate, the transcript of the oral argument during which the Magistrate questioned Topp closely on its reliance upon Florida law, and the briefs submitted by the parties, the Court agrees with Defendant that Plaintiff's time to argue that Texas law applies to the oral contract claims has passed.

First, unlike with respect to the tort law claims discussed *infra*, Plaintiff never once cited to a Texas case or stated to the Magistrate Judge that it was asking the Court to consider the application of Texas law to its contract claims.  In fact, Plaintiff stated during oral argument that, "unless one side or the other is asking the court to apply the law of another forum, it is the law of forum (sic) where the court sits in diversity matters."  Plaintiff now argues that it was Uniden's burden to bring the choice of law "issue" to the Court's attention.

The Court finds, as Plaintiff itself stated at oral argument, that with respect to the contract issue, "because the parties failed to consider the choice of law in this diversity case, we must presume that the substantive law of the forum (Florida) controls." *International Ins. Co. v. Johns*, 874 F.2d 1447, 1458 n. 19 (11th Cir.1989). In *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237 (11th Cir.1985), a party did not raise a choice of law issue on summary judgment and the district court applied the law of its own forum. *Id.* at 1238.  After the party lost on summary judgment, it raised the choice of law issue in a motion to amend the judgment, arguing that the court had erred in applying the law of its forum. *Id.*

On appeal, the Eleventh Circuit held that the district court was well within its discretion in denying the motion where the choice of law issue was raised for the first time after the entry of summary judgment. *Id.* at 1239. It noted that plaintiff attempted to raise the argument only after failing to prevail in its interpretation of the forum's law, and allowing the litigant to now do so would essentially afford " 'two bites at the apple.' " *Id.* (citation omitted).

It is within this Court's discretion as to whether it will receive evidence not presented to the Magistrate. *See Papapanos v. Lufthansa German Airlines,* 1996 WL 33155438 *11 (S.D.Fla.1996)(discussing why court should be reluctant to consider matters not addressed before the Magistrate). Although summary judgment has not yet been entered and the Court recognizes that the district court's relationship with magistrates differs from its relationship with the appellate court, the same principles apply. Allowing Plaintiff to now present an entirely new argument even though the Magistrate expressly inquired as to Topp's stance on choice of law would defeat the purpose of referring this matter to the Magistrate.

Here, where Plaintiff has not cited to a single Texas case in its summary judgment pleadings or at oral argument and so much time has already been expended on this case, the Court exercises its discretion to decide that it is inequitable to now entertain a choice-of-law argument. Thus, Florida law will continue to apply to Plaintiff's oral contract claims.[1]

### 2. Tort Law Claims

Plaintiff's argument that Texas law should apply to its tort claims is a slightly easier pill for the Court to swallow. Although neither party raised the issue to the Magistrate by fully briefing the choice of law issue, Plaintiff had at least some citations to Texas case law and made at least some representations during oral argument that Texas law should apply. It is also correct in now arguing that it was not improper to also cite to Florida law as an argument in the alternative. Therefore, the Court will engage in a choice-of-law analysis.

A federal district court sitting in Florida and deciding a tort claim is required by Florida choice-of-law rules to apply the "most significant relationship test." *Trumpet Vine Inv. v. Union Capital,* 92 F.3d 1110, 1115–1116 (11th Cir.1996). Under this test, the court will apply the law of the jurisdiction that has the most significant relationship to the occurrence and the parties under the principles as stated in the Restatement (Second) of Conflict of Laws § 6 (1971). *Id.* Contacts to be taken into account in applying the principles of § 6 include (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of the business of the parties and (d) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145. The Restatement also notes that "these contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

The Restatement also contains a provision, § 148, applicable to fraud and misrepresentation claims. It provides, in relevant part:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false

---

1. That said, given (1) the Court's adoption of the Magistrate Judge's finding that under Florida's UCC Statute of Frauds provision Plaintiff's oral contract claims are barred (*in-* *fra* at n. 4), and (2) Plaintiff's admission that the result under both Florida and Texas UCC law would likely be the same, the Court finds that this issue is rendered moot.

representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

The Eleventh Circuit has considered § 148 contacts in addition to § 145 contacts on at least one occasion. *See Trumpet Vine Inv.*, 92 F.3d at 1118, *but see Green Leaf Nursery v. I.E. DuPont De Nemours and Co.*, 341 F.3d 1292 (11th Cir.2003)(only considering § 145 in deciding that Florida law applied to a fraudulent inducement claim). Consequently, this Court will consider both sections in its analysis.

The Court considers §§ 145 and 148 contacts together, as the contacts set out in each overlap substantially. First, Plaintiff alleges that the tortious conduct occurred in Texas. In support, it points out that one of Plaintiff's executives stated that he often went to Texas to meet with Uniden, while one of Uniden's executives only testified to a single meeting in Miami. The Court supposes that Plaintiff is asking it to infer that either Defendant made or Plaintiff accepted the representations in Texas.

The Court does not find the evidence presented by Plaintiff establishes either that Plaintiff received or that Defendant made the alleged representations in Texas. In *Trumpet Vine Inv.*, a case heavily relied upon by Plaintiff, the court was able to identify the particular meeting at which the alleged representations occurred. 92 F.3d at 1118. Here, Plaintiff either does not or cannot point to any particular meeting or event during which these representations took place, which leads the Court to place less weight on these particular factors. While Florida may not be the place where the representations took place, the Court cannot say that they took place in Texas either, thus leading the Court to conclude that neither state emerges as the place where the representations were received or made or the place where the tortious conduct occurred.

Plaintiff also seems to fail to take into account the place where it acted in reliance upon Defendant's representations. Plaintiff Topp is a Florida corporation, and all of its principals and employees reside in Florida. In the Amended Complaint, it alleges that in reliance on Defendant's representations, it "continu[ed] to do business with Uniden America, b[ought] B-product from Uniden America, and invest[ed] in facilities for the refurbishing of Uniden America B product." The Court assumes that because Topp's operations are centered in Florida, the place where it performed these acts in reliance was in Florida. Thus, this factor militates in favor of applying Florida law.

Turning to the factor of the place of injury, Topp argues that this factor is "less significant in the case of fraudulent representations." *Id.* at 1116 (citation omitted). Topp then goes on to argue that although it is a Florida corporation, because custom-

ers were lost in other fora such as Canada and Mexico, the connection to Florida is more tenuous. Topp also cites to *Default Proof Credit Card Sys.*, 753 F.Supp. 1566, 1571 (S.D.Fla.1990) (citing comment f to § 145 of the Restatement(Second) of Conflicts of Law), for the proposition that where the loss of customers and trade is in more that one state, the effect of the loss will be felt most severely at plaintiff's headquarters, but that this place may have only a slight relationship to defendant's activities and to plaintiff's loss of customers or trade.

While it may be true that this factor takes a backseat to other contacts in fraud cases, the Court still affords it weight where as here the place of tortious conduct is unclear. And, the Court does not really agree that the place of injury is scattered. It appears to the Court that with all of the operations and personnel Topp has in Florida, that majority of the injury necessarily occurred in Florida. Further, the Court does not find the citation to *Default Proof Credit Card Sys.* persuasive. First, that case dealt with ascertaining the place of injury in a misappropriation of trade secrets context. Second, the comment of the Restatement cited by that court speaks to the injury suffered through false advertising and misappropriation of trade values. Therefore, the Court finds that the place of injury factor nudges it towards the application of Florida law.

Finally, considering where the relationship of the parties is centered, Topp urges the Court that because written contracts between the parties have contained Texas choice of law provisions, Texas is where the relationship is centered. The Court simply does not find that this in and of itself is enough to conclude that Texas is where the parties' relationship is centered.

And, there is no other evidence presented by Topp to support that conclusion.

On balance, the Court finds that Florida has the most significant relationship to the claims, and that Florida law should apply to Topp's tort claims. The place of injury, although possibly felt in places other than Florida, indisputably occurred mainly in Florida. Topp seems to have acted in reliance on the alleged misrepresentations in Florida. Topp is located in Florida, counsel is from Florida, and chose to bring this case in Florida. Conversely, the place of the misrepresentations and the place where the parties' relationship is centered is unclear. Florida has an interest in this case and protecting a Florida Plaintiff, rendering the application of Florida law entirely appropriate.

### B. Count I

Plaintiff objects to the R & R's analysis, arguing that (1) Fla. Stat. § 672.201 applies to its claims and thus there is a quantity term sufficient to satisfy the Statute of Frauds; (2) the Statute of Frauds does not apply to fully performed contracts; (3) the R & R wrongly rejected Plaintiff's promissory estoppel argument; (4) the 2003 written contract did not extinguish Plaintiff's existing claims; and (5) the 2003 written B-stock agreement has been placed at issue in the pleadings.

### 1. Alleged Oral A-stock and B-stock Agreements are Unenforceable Pursuant to the Statute of Frauds

Magistrate Judge Simonton found that the alleged oral agreements as to both new product (A-stock) and old product (B-stock) were unenforceable pursuant to the Statute of Frauds. She found that of the two potentially applicable Florida Statutes of Frauds, Fla. Stat. § 725.01,[2] the general

---

**2.** Fla. Stat. § 725.01 states, in pertinent part:

> No action shall be brought ... upon any agreement that is not to be performed with-

statute, and § 672.201,[3] which governs oral contracts for sale of goods, § 725.01 controlled. In making this finding, she relied on Eleventh Circuit precedent applying § 725.01 and determining that oral distributorship agreements intended to last for more than one year, such as those at issue here, are not enforceable. *See All Brand Importers v. Tampa Crown Distrib. Inc.,* 864 F.2d 748 (11th Cir.1989) (affirming grant of summary judgment on counterclaim under § 725.01 on the ground that oral exclusive distributorship contract was perpetual). *See also Anthony Distrib., Inc. v. Miller Brewing Co.,* 941 F.Supp. 1567, 1574 (M.D.Fla.1996) (applying § 725.01 to find that alleged oral distributorship agreement not supported by writing unenforceable).

Florida state court cases considering this issue have also applied § 725.01 to like factual scenarios. *See, e.g., Coleman Co. v. Cargil Int'l Corp.* 731 So.2d 2 (Fla.3d Dist. Ct.App.1998) (finding that oral distributorship agreement was unenforceable pursuant to statute of frauds, relying on both §§ 725.01 and 672.201 in so finding.).

After finding that § 725.01 governed Topp's claims, Judge Simonton then determined that none of the writings presented by Topp satisfy the Statute of Frauds because they lack the essential terms of the agreements: duration, quantity, price and geographic territory.

The Court adopts the R & R's analysis and agrees that Topp's breach of oral agreement claims, with respect to both A-stock and B-stock, are barred by the Statute of Frauds.

To the extent Topp objects to the R & R on the grounds that § 672.201 rather than § 725.01 applies, the objection is overruled. The Amended Complaint itself alleges that the agreements breached were "exclusive distribution agreements." Further, the facts of this case lend themselves to establishing, if anything, an exclusive distribution agreement rather than an oral contract for a sale of particular goods. Therefore, the Court finds persuasive, as Judge Simonton did, case law applying § 725.01 to such agreements.

in the space of 1 year from the making thereof ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged thereof or by some other person by her or him thereunto lawfully authorized.

3. Fla. Stat. § 672.201 is titled Formal Requirements; statute of frauds, and states, in pertinent part:

(1) Except as otherwise provided in this section a contract for a sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirement of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable: ...

(b) If the party against whom enforcement is sought admits in his or her pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) With respect to goods for which payment has been made and accepted or which have been received and excepted (s. 672.606).

The Court also finds that none of the writings relied upon by Topp, considered either separately or as a whole, supply the key terms of the alleged oral agreements. Topp argues that because the agreements dealt with a sale of goods, they are governed by Fla. Stat. § 672.306, which provides, in relevant part, "[a] lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods .…" Plaintiff contends that this provision means that "all" is a sufficient quantity term under this section. *See, e.g., Riegel Fiber Corp. v. Anderson Gin Co.,* 512 F.2d 784, 788–91 (5th Cir.1975) (reversed a dismissal on "Statute of Frauds grounds finding "all" a sufficiently definite quantity term.").

Plaintiff also proffers a writing not discussed in the R & R to support its position. They claim that a letter from Defendant's CEO, sent January 31, 2001, confirms the oral B-stock agreement because it states "our relationship has always been one of reciprocal exclusivity."

First, as just discussed, Judge Simonton found, and the Court agrees, that this was a contract for an exclusive distributorship agreement rather than a contract for a sale of goods. Second, assuming *arguendo* that "all" is a sufficient quantity term under § 672.306, Topp has still not proffered any writings that speak to duration, price or subject matter, which under § 725.01, are key terms needed to satisfy the Statute of Frauds. Plaintiff asserts that the exact terms of the parties' agreement are issues for trial. This assertion is simply not supported by Florida case law, and the Court rejects the argument. Case law is clear that even if a writing shows the parties' clear intent to be bound, that is "distinct from the question of sufficiency

under the Statute of Frauds." *Craig R. Weiner Assoc. Inc. v. Sherden,* 444 So.2d 431, 432 (Fla. 5th Dist.Ct.App.1983).

Further, the January 31, 2001 writing Plaintiff points to still does not provide enough to take the oral agreement out of the Statute of Frauds. While it does refer to a relationship of reciprocal exclusivity, it also states in the same paragraph that "Topp wants to have a written agreement in place. The draft we reviewed is close to satisfying both companies."

Even if this writing were enough to define a quantity term, it still does not speak to duration, price, or any of the other key terms of the alleged oral agreement. What is perhaps even more telling is that this writing explicitly states that the parties had not yet reached an agreement. How the Court could now use the same writing to define terms of an oral agreement existing at that same time is unclear.[4]

Plaintiff's objection that full performance takes the agreement out of the Statute of Frauds is also overruled. Topp cites to numerous Florida cases which it asserts stand for the proposition that the Statute of Frauds applies only to executory contracts and does not apply to agreements fully performed on both sides. Without addressing whether the alleged oral agreements were in fact fully performed, the Court finds Topp's argument to be unpersuasive.

In *Eclipse Medical, Inc., v. American Hydro–Surgical Instruments, Inc.,* 262 F.Supp.2d 1334, 1346 (S.D.Fla.1999), plaintiffs argued that a performance exception exempted them from Statute of Frauds requirements. The court explained that "Florida courts have uniformly held that the 'performance exception' to the Statute

---

**4.** As a result, the Court also affirms the Magistrate Judge's finding that even if § 672.306

applies, there is still no writing presented by Topp that satisfies the Statute of Frauds.

of Frauds, which arose in land sale cases, applies only when a plaintiff seeks purely equitable relief."

The court further explained that although "some courts have expanded the performance exception to include oral agreements other than those for the sale of land ... every court that has allowed the exception has **explicitly done so only in cases at equity when the relief sought was specific performance in the form of payment due under the oral agreement.**" *Id.* at 1346, n. 4 (emphasis added).

Here, Topp is seeking unspecified damages, and does not appear to be seeking equitable relief in the form of payment due under the agreement. Topp has not distinguished or addressed *Eclipse Medical* in any manner, and none of the cases cited by Topp post-date *Eclipse Medical.* The Court finds *Eclipse Medical* applies here and the instant case is not one where full performance will take the agreements out of the Statute of Frauds.

Topp also objects to the R & R on the grounds that it erred in finding that the 2003 written contract extinguished existing claims and in rejecting its promissory estoppel argument. The Court need not address whether the written contract extinguished Topp's claims because it has already found that the Statute of Frauds bars those claims. The Court also overrules Topp's promissory estoppel objection. The only argument it sets forth is based on Texas law. As set out in the R & R, Florida law clearly precludes a party from using promissory estoppel to evade the Statute of Frauds. *R & R* at 38–39.

Therefore, the R & R as to Count I is adopted and summary judgment as to Topp's claims for breach of alleged **oral agreements** is GRANTED.

### 2. The 2003 Written B–Stock Agreement

Topp objects to the R & R's finding that the Amended Complaint did not plead a breach of the September 12, 2003 written B-stock agreement. The Court now finds that although the Amended Complaint is unclear as to which contracts Defendant allegedly breached, it does appear that the parties have, to an extent, been litigating under the 2003 written contract, and that Uniden moved for Summary Judgment on Statute of Frauds grounds only as to the alleged oral agreements. Therefore, Plaintiff may file a Second Amended Complaint, alleging in Count I **only** a breach of the 2003 written contract.

Plaintiff shall have until April 6, 2007, to file the Second Amended Complaint. Defendant shall then have until April 26, 2007, to file an answer, and concurrently a Motion for Summary Judgment as to Count I.

### C. Count II

Magistrate Judge Simonton recommended that summary judgment be granted as to the Costco Mexico tortious interference claims because the economic loss rule bars Topp from raising breach of contract issues as torts.

In recommending dismissal of Count II, Judge Simonton found that the economic loss rule would prevent Topp from recovering damages stemming from Uniden's alleged tortious interference with Topp's contract with Costco Mexico because such damages are subsumed with those damages that would flow from Uniden's alleged breach of its contract to deliver to Topp products meant for Costco. She found that Topp could only bring a breach of contract claim against Uniden for failing to deliver timely goods to Topp and subsequently selling directly to Costco Mexico, not a tortious interference claim. She not-

ed that there was a particular contract in place between Topp and Uniden regarding the sale of goods to Costco Mexico but that a breach of this particular contract was not alleged.[5]

Judge Simonton found *Eclipse Medical* to be on point with the facts of this case, and adopted its reasoning. There, plaintiff distributors brought an action against defendant suppliers alleging *inter alia*, breach of contract, fraudulent inducement and tortious interference with business relationships. Under the tortious interference claim, plaintiffs alleged that defendants tortiously interfered by (1) making direct sales to customers within plaintiffs' exclusive territories, and (2) delaying delivery of products to plaintiffs.

As to the allegation that defendants made direct sales in plaintiffs' exclusive territories, the court found that it simply restated the Plaintiff's claim for breach of contract and was barred by Florida's economic loss rule. 262 F.Supp.2d at 1353–55. As to the allegation that defendants delayed selling products to plaintiffs, the court found that the only reason defendants would have an obligation to timely deliver goods would arise from the contract between the parties, and therefore, the economic loss rule barred the tort claim. *Id.* at 1356–57.

Plaintiff objects, arguing that *Indemnity Insurance Co. of North America v. American Aviation, Inc.*, 891 So.2d 532, 543 n. 3 (Fla.2004) applies and holds that "[i]ntentional tort claims such as ... intentional interference ... and other torts requiring proof of intent generally remain viable ... if the parties are in privity of contract." Plaintiff further argues that even under *Eclipse Medical* its claim is viable because the interference claim is not premised on

conduct that overlaps exactly with its breach of contract claim.

The Court disagrees with Plaintiff's reading of *Indemnity Insurance* and overrules its objection. Plaintiff's reading of *Indemnity Insurance* is too narrow. *Indemnity Insurance* specifies that even where parties are in privity of contract, a tort action is still barred where a defendant has not committed a breach of duty apart from a breach of contract. In other words, **only if** a tort is independent of a breach of contract, and requires proof of facts separate and distinct from the breach of contract claim, will the economic loss doctrine not operate as a bar to the tort claim. *See Id.* at 537. The footnote in *Eclipse Medical* upon which Topp relies is mere dicta, citing to a Florida Bar Journal Article opining on what the economic loss rule **should** stand for. And, even the cited article itself recognizes that "[i]ntentional tort claims that allege no more than a breach of contractual obligations should be barred by the doctrine ...." In discussing *Hoseline, Inc. v. U.S.A. Diversified Prods. Inc.*, 40 F.3d 1198 (11th Cir.1994), a case holding that Florida's economic loss rule barred plaintiff's fraud claim, the article observed that where the defendant under-shipped goods to plaintiff's customers, it "did no more than breach its contract, **albeit intentionally**, and so it is to that contract that plaintiff must turn for its remedies." Paul J. Schwiep, *The Economic Loss Rule Outbreak: The Monster that Ate Commercial Torts*, Fla. B. J., Nov. 1995, at 34, 42 (emphasis added).

The Court also finds that even under *Eclipse Medical*, Plaintiff's claim is still barred by the economic loss rule. Here, the conduct forming the basis of the tort is not independent of a breach of contract.

---

**5.** Plaintiff states that Defendant "had committed to a delivery date for products to Costco de Mexico based on confirmed purchase or-  ders from Topp." *Opposition to Summary Judgment* at 20.

Topp specifically alleged that Defendant, in bad faith, failed to timely and completely fulfill an order procured by Topp for several hundred thousand dollars of new Uniden product meant for Costco Mexico. As a result, Costco Mexico cancelled its order, refused to do more business with Topp, and began to deal directly with Uniden America. Like the defendant in *Eclipse Medical,* the only reason Defendant Uniden would have had a duty to timely deliver goods would arise from a contractual obligation. Further, even though Topp may argue that Defendant intentionally breached, like in *Hoseline,* even where breach is intentional, the economic loss rule forecloses tort claims. Therefore, the R & R is adopted as to Count II's Costco Mexico claims, and summary judgment is GRANTED.

### D. Count III

The R & R recommended that summary judgment be granted as to Count III because the economic loss rule bars the tort claims and also because pursuant to the conclusion in Count I, that the alleged oral agreements which form the basis of the fraud claims are unenforceable, Plaintiff cannot avoid the Statute of Frauds by restating its breach of contract claim as a tort.

Because the Court affirmed the R & R's finding that all oral agreement claims were barred by the Statute of Frauds, the Court further affirms the R & R that to the extent the fraud claims in Count III are premised on unenforceable oral agreements, the Motion for Summary Judgment is GRANTED. Under Florida law, the Statute of Frauds "may not be avoided by a suit for fraud based on oral representation." *See Eclipse Med. Inc.,* 262 F.Supp.2d at 1345 (citation omitted).

The R & R also denied the Motion to Dismiss as moot. With respect to Count III, Defendants moved to dismiss on the

ground that Topp failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). At the hearing, Topp conceded that it had not pled the fraud claim with sufficient specificity, and asserted that some of the allegedly fraudulent actions upon which it now relies were not known to it at the time it filed the Amended Complaint (DE # 226 at 68, 75–76). The Court agrees that Count III does not meet the pleading requirements of 9(b). Therefore, the Motion to Dismiss as to the remainder of Count III is GRANTED without prejudice, with leave to refile in the Second Amended Complaint, in conformity with the requirements of 9(b). In Count III of the Second Amended Complaint, Plaintiff may only allege fraudulent inducement with respect to the 2003 written B-stock agreement.

The Court reserves judgment on whether the economic loss rule bars Plaintiff's tort claims to the extent that the 2003 written B-stock agreement forms the basis of the fraud claim, because the R & R did not expressly consider the written agreement in its analysis. Defendant shall have leave to file a one page pleading arguing that the economic loss rule applies, to be filed by *April 26, 2007.*

### III. Conclusion

**ADJUDGED** that United States Magistrate Judge Andrea M. Simonton's Report and Recommendation (D.E. No. 228) filed on *January 22, 2007* is **AFFIRMED** and **ADOPTED IN PART**. Accordingly, it is

**ADJUDGED** that:

(1) Defendant's Motion for Summary Judgment as to Plaintiff's breach of oral agreement claims in Count I is GRANTED.

(2) Defendant's Motion for Summary Judgment as to Count II as it pertains to Costco Mexico is GRANTED.

(3) Defendant's Motion for Summary Judgment as to Count III as it pertains to the oral agreements is GRANTED. (4) Defendant's Motion to Dismiss as to Count III is GRANTED, without prejudice. Plaintiff shall have until April 6, 2007, to file a Second Amended Complaint. The Second Amended Complaint may allege a breach of the written 2003 B-stock agreement and a fraudulent inducement claim as it pertains to the 2003 agreement. The fraud claim shall be pled in conformity with Fed.R.Civ.P. 9(b). Defendant shall have until April 26, 2007, to file concurrently an answer and Motion for Summary Judgment as to the new Count 1.

(5) Defendant's Motion for Summary Judgment as to Count III as it pertains to the written 2003 B-stock agreement is DENIED without prejudice. Defendant shall have until April 26, 2007, to refile a one page pleading alleging that the economic loss rule applies to the new Count III.

## REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SIMONTON, United States Magistrate Judge.

Presently pending before the Court are Defendant Uniden America Corporation's (hereafter Uniden America), Motion For Summary Judgment (DE # 101, filed 8/25/06) and Defendant Uniden America's Motion To Dismiss the Amended Complaint (DE ## 58, 59, filed 6/8/06). These motions are referred to the undersigned Magistrate Judge (DE # 114). These motions are fully briefed (DE ## 79, 85, 102, 133, 143, 160). On November 28, 2006, the undersigned held a hearing on the motions. For the reasons stated below, it is recommended that Defendant's motion for summary judgment be granted, and that Defendant's motion to dismiss be denied as moot.

### I. Introduction

Plaintiff Topp, Inc., (hereafter Topp) is proceeding under a three-count Amended Complaint (DE # 41). In Count I of the Amended Complaint, Topp contends that Uniden America breached exclusive distribution agreements for the sales of new products in Latin America and used products in the United States, Canada and Latin America. Specifically, Topp contends that, beginning in 1998, it served as Uniden America's sole independent sales representative, and subsequently, at some unstated date, Uniden America's exclusive distributor, for certain new products in Latin America. Topp further contends that beginning in 1996, Topp purchased, on an exclusive basis, Uniden America's "as is" products returned from Uniden America's United States distributors and Topp then exclusively distributed the refurbished "as is" products to retailers in the United States, Canada and Latin America. Topp contends that it relied upon its exclusive agreements with Uniden America, and upon Uniden America's assurances the agreements would continue, in purchasing millions of dollars of new and refurbished products and expending considerable effort and expense in marketing Uniden America's products. Topp then claims that in late 2004, Uniden America breached the exclusive distributor agreement with Topp for new products by terminating it without advance notice, and that Uniden America then began selling new products, at substantially lower prices, both directly and through third parties, to customers originated by Topp during the existence of the exclusive distribution agreement. Topp further alleges that these actions by Uniden America effectively destroyed Topp's ability to sell refurbished "as is" Uniden America products in Latin Amer-

ica and effectively breached the exclusive distribution agreement for the sale of refurbished "as is" Uniden America products. Topp also contends that Uniden America breached the exclusive distribution agreement for the sale of refurbished "as is" Uniden America products by skimming off the most lucrative B-stock product for its own use, and leaving the less desirable B-stock product for Topp (DE # 41 at ¶¶ 7–20).

In Count II, Topp alleges that Uniden America tortiously interfered with Topp's advantageous business relationships with Lectron Radio Sales, Ltd. (Lectron), and Costco Wholesale Corporation in Mexico (Costco Mexico). Specifically, Topp contends that, beginning in 1998, it had an advantageous business relationship selling refurbished Uniden America telephones to Lectron, located in Canada, and that in July 2004, Uniden America threatened Lectron that it would terminate direct sales of other Uniden America products to Lectron if Lectron did not stop purchasing refurbished Uniden America telephones from Topp. Topp claims that due to these threats, Lectron stopped purchasing refurbished Uniden America telephones from Topp. Topp further claims that in the fall of 2004 it obtained two orders totaling nearly $1,000,000.00 from Costco Mexico, and that, in an attempt to sabotage the

relationship between Topp and Costco Mexico, Uniden America, in bad faith, failed to timely and completely fulfill an order procured by Topp for several hundred thousand dollars of new Uniden America product meant for Costco Mexico. As a result, Costco Mexico cancelled its order, refused to do more business with Topp, and began to deal directly with Uniden America (DE # 41 at ¶¶ 21–30).

In Count III, Topp contends that over the course of Uniden America's business relationship since 1996, Uniden America continuously falsely represented to Topp that it was supplying Topp with all of the B-products it obtained in that time period, and that at the time Uniden America made those statements, Uniden America knew that the statements were false because it was skimming the best B-products off for its own benefit on resale, leaving to Topp the B-products of lesser value. Topp alleges that Uniden America intended that Topp should rely on these false statements, and that Topp, oblivious to the skimming, reasonably relied on these misrepresentations to its detriment by continuing to do business with Uniden America, buying B-product from Uniden America, and investing in facilities for the refurbishing of Uniden America B-product (DE # 41 at ¶¶ 31–35).[1]

The instant motions followed.

---

1. Topp's initial, two-count, complaint did not include the fraud allegations pled as Count III in the Amended Complaint, and also did not include the allegation of tortious interference with Topp's relationship with Costco Mexico pled in Count II of the Amended Complaint (DE # 1). On November 30, 2005, Uniden America filed an Answer and a four-count Counterclaim to the initial Complaint (DE # 12). In its Counterclaim, which is not the subject of the pending motions, Uniden America alleges that on September 12, 2003, it entered into an agreement with Topp for the sale of Uniden America customer returned B–Stock Uniden America branded consumer cordless telephone products to be resold by Topp after refurbishing, and Topp agreed to

pay Uniden America for B–Stock Products within 150 days of the date of Uniden America's invoice. Uniden America alleges that it timely delivered such products and submitted invoices, but that Topp failed to pay $2,182,124.57 owed to Uniden America pursuant to the Agreement, and did not object to the Statement of Account mailed on June 30, 2005. Uniden America alleges the following theories: Breach of Contract (Count I); Account Stated (Count II); Open Account (Count III) and Unjust Enrichment (Count IV) (DE # 12).

Uniden America has not filed an Answer to the portion of Count II of the Amended Complaint concerning the Lectron claim. Uniden

## II. *The Instant Motions*

### A. *Defendant's Motion For Summary Judgment*

In its summary judgment motion, Uniden America requests summary judgment on Topp's claim that Uniden America breached an oral contract making Topp the exclusive distributor of certain new Uniden America products because 1) the alleged oral contract is unenforceable pursuant to the statute of frauds; 2) the alleged oral contract lacks all of the essential terms of a contract; and 3) if the claim belongs to any entity, it belongs to Topp–Mexico, S.A., not Topp. Uniden America also requests summary judgment on all of Topp's oral contract claims regarding B–Stock product prior to September 12, 2003, because the claims: 1) are unenforceable under the statute of frauds; 2) lack all of the essential terms of a contract; and 3) contravene the merger doctrine. Uniden America further requests summary judgment on the tortious interference claim related to Costco Mexico because 1) the claim violates the economic loss rule; and 2) if the claim belongs to any entity, it belongs to Topp–Mexico, Inc., not Topp. Next, Uniden America requests summary judgment on the fraud count because Topp cannot maintain the fraud claim, which is based upon an alleged breach of contract, based upon alleged statements made by Uniden America prior to the formation of the alleged contract in order to induce Topp to enter into the contract because the statements in question relate to performance under the contract. Finally, Uniden America asks for summary judgment as to Topp's unpleaded damage claims regarding: 1) Topp's loss of Mexico business; 2) the loss of Topp's "entire investment", the return of master unopened cartons; and 4) Uni-

America has neither moved to dismiss nor moved for summary judgment on the Lectron

den America's alleged failure to maximize customer returns of B–Stock product for delivery to Topp (DE ## 101, 102).

Topp responds that the record contains written memoranda which are sufficient to take the alleged oral exclusive distribution agreements outside the Statute of Frauds, and that a quantity term sufficient to satisfy the Statute of Frauds can be inferred from prior and subsequent written agreements between the parties. Topp further asserts that the merger clause in the subsequent written B-stock contract does not erase a pre-existing breach of a prior oral contract. Concerning the tortious interference count, Topp contends that the record evidence shows that Uniden America's alleged improper actions were tortious and were more than a mere breach of contract. Finally, as to the fraud claim, Topp contends that the record establishes that Uniden America skimmed B-stock and lied about that fact to Topp, and that because the fraud induced Topp to enter into a contract with Uniden America, the fraud allegation is not barred by the economic loss rule (DE # 45).

In reply, Uniden America states that none of the documents relied on by Topp in its opposition to the motion for summary judgment refer to the essential terms of an agreement: quantity; duration; or price, (or even geographic territory or whether the alleged agreement included new product). Next, Uniden America reiterates its argument that the tortious interference claim as to Costco Mexico is barred by the economic loss rule. Finally, Uniden reiterates that Topp's claim that Uniden America, acting in bad faith, breached its contract with Topp, cannot be converted into a tort claim.

claim by characterizing the alleged breach as a fraud (DE # 143).

### B. *Defendant's Motion To Dismiss The Amended Complaint*

In its motion to dismiss, Uniden America contends that: 1) Count I should be dismissed because Topp's oral contracts claims are unenforceable under Florida's statute of frauds; 2) Topp's tortious interference claim relating to Costco Mexico fails as a matter of law because a) a tortious interference claim based on a delay in delivering products is barred by the economic loss rule and b) Uniden America was the source of the business opportunity allegedly interfered with; and 3) Count III should be dismissed because: a) the fraud claim is barred by the economic loss rule; b) Topp cannot avoid the Statute of Frauds by alleging a fraud claim based on oral representations and c) Topp has failed to plead fraud with the particularity required by Fed.R.Civ.P. 9(b) (DE ## 58, 59).

Topp responds that its claim for breach of exclusive distribution agreements is outside the statute of frauds because 1) the exclusive distribution agreement beginning in 1996 relating to "as is" products is documented by letters, email messages and other documents sent by Topp to Uniden America, to which Uniden America failed to object, and by the September 12, 2003 written agreement; 2) the September 12, 2003 contract is evidence of the exclusive distribution agreement beginning in 1996; 3) the exclusive distribution agreement for new products is documented by numerous writings sent by Topp to Uniden America, to which Uniden America failed to object; 4) the exclusive distribution agreements are outside of the statute of frauds because writings between the parties are sufficient to make out the contract. Topp then states that the claim for tortious interference relating to Costco Mexico should not be dismissed because Topp alleges that Uniden America, in bad faith, failed to deliver products to Topp, and because Uniden America was not a party to the contract between Topp and Costco Mexico. Finally, Topp asserts that the fraud count should not be dismissed because 1) if there are no valid exclusive distributor agreements, the economic loss rule does not apply; 2) the fraud claim is independent of any enforceable agreement and 3) the fraud claim is pled with sufficient specificity (DE # 79). At the hearing, Topp conceded that it had not pleaded the fraud claim with sufficient specificity, and asserted that some of the allegedly fraudulent actions upon which it now relies were not known to it at the time it filed the Amended Complaint (DE # 226 at 68, 75–76).

Uniden America replies that the written September 12, 2003 contract regarding "as is" telephones does not satisfy the statute of frauds as: 1) it was executed seven years after the alleged formation of the oral contract; 2) states that it is the only agreement between the parties and supercedes all prior agreements; and 3) the Amended Complaint does not allege that this agreement was breached. Uniden America also states that Topp has not pointed to any evidence which supports the existence of the supposed oral exclusive distributorship for Uniden's new product, which was allegedly formed in 1988. Uniden America also notes that the Amended Complaint does not allege the written agreement allegedly breached or the essential terms of the agreements allegedly breached. Uniden reiterates its initial argument concerning the tortious interference claim relating to Costco Mexico. Next, Uniden America again asserts Topp cannot maintain a claim for fraudulent inducement to contract because the alleged oral contracts are unenforceable. Finally, Uniden America contends that Topp's fraudulent inducement claim cannot be

predicated on the September 12, 2003 written contract because Topp has not pled that claim in the Amended Complaint (DE # 85).

### III. *The Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir.2001). Summary judgment is an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). In assessing whether the movant has met its burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion and all reasonable doubts about the facts should be resolved in favor of the non-movant. *See Denney v. City of Albany,* 247 F.3d at 1181.

The moving party has the burden to establish the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Allen v. Tyson Foods, Inc.,* 121 F.3d at 646. Once the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a response setting forth "specific facts" showing that there is a genuine issue for trial. Thus, the party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings, but must present sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505.

Conclusory allegations will not suffice to create a genuine issue of material facts. *See Leigh v. Warner Bros. Inc.,* 212 F.3d 1210, 1217 (11th Cir.2000). There must be more than a scintilla of evidence; there must be "substantial conflict in evidence to support a jury question." *Tidwell v. Carter Prods.,* 135 F.3d 1422, 1425 (11th Cir. 1998), *quoting Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods,* 121 F.3d at 646; *accord Denney v. City of Albany,* 247 F.3d at 1181.

### IV. *Undisputed Material Facts* [2]

Uniden America sells cordless telephones and other electronics products all over the world (DE # 103 at 1, ¶ 1).

Topp was engaged in the business of refurbishing and selling consumer electronic products (DE # 103 at 1, ¶ 2).

---

**2.** The following facts are taken from the parties' statements of undisputed material facts

(DE ## 103, 134).

A. *The Business Relationship Between Topp and Uniden America Regarding B–Stock*

1. *The Business Relationship Between Topp and Uniden America Regarding B–Stock Before November 30, 1999* [3]

On December 3, 1996, Uniden America and Topp entered into a Refurbishment and Sale Agreement in which Uniden America agreed to provide Topp with Uniden branded returned "as is" product (consumer cordless telephones, radar detectors and CB radios) for refurbishment on an exclusive basis except for product which was returned to a Uniden facility for refurbishment. The agreement expressly stated that it lapsed in three years except that either party could cancel the agreement for any reason with six months written notice (DE # 103 at 2, ¶ 5; DE # 134 at 5, ¶ 8).

On March 31, 1997, Uniden America and Topp entered into a Sales Agreement in which Uniden America agreed to sell to Topp all of its A–1 refurbished Uniden branded consumer cordless telephones on a limited exclusive basis. [4] Uniden America reserved the right to sell its product to certain of its customers. The agreement was limited in duration to one year, and subject to prior termination by either party in writing upon the other party's breach or upon six months' written notice (DE # 103 at 2, ¶ 6; DE # 134 at 5, ¶ 9).

Also on March 31, 1997, Uniden America and Topp entered into another sales agreement for the sale of Uniden America's customer returned B–Stock Uniden branded consumer cordless telephones on a limited exclusive basis. It also was limited in duration to one year, and subject to prior

termination by either party upon the other party's breach or upon six months' written notice (DE # 103 at 3, ¶ 7).

On November 1, 1997, Uniden America entered into a Sales Agreement with Topp in which Uniden agreed to sell to Topp all of its A–1 refurbished Uniden branded consumer cordless telephones on a limited exclusive basis. The agreement stated that it was limited in duration to two years, and subject to prior termination by either party in writing upon the other party's breach or upon twelve months written notice (DE # 103 at 3, ¶ 8; DE # 134 at 5, ¶ 9). This agreement lapsed on November 30, 1999 (DE # 103 at 4, ¶ 11; DE # 134 at 5–6, ¶ 10).

All of the above agreements contained merger clauses in which the parties agreed that the specific agreement superseded any prior agreements, written or oral, with respect to the subject matter of that agreement (DE # 103 at 3, ¶ 9).

2. *The Business Relationship Between Topp and Uniden America Regarding B–Stock From November 30, 1999 Through September 12, 2003*

From November 30, 1999 through September 12, 2003, the business relationship between Uniden America and Topp was not memorialized in a written agreement. Topp and Uniden America continued to do business with Topp purchasing product from Uniden America pursuant to specific purchase orders (DE # 103 at 4, ¶ 12; at 9, ¶ 35).

From November 1999 through September 2003, Uniden America and Topp exchanged several draft agreements that

---

**3.** B–Stock is returned and unrefurbished, "as is" product (DE # 103 at 4, ¶ 7).

**4.** A–1 product is returned "as is" product that has been refurbished (DE # 103 at 3, ¶ 6).

were never signed because they could not agree on terms (DE # 103 at 4, ¶¶ 13, 14; at 5, ¶ 17).

### 3. The September 12, 2003 B–Stock Agreement Between Topp and Uniden America

On September 12, 2003, Uniden America and Topp signed a written agreement in which Uniden America agreed, under certain conditions, to sell exclusively to Topp all of Uniden's B–Stock products, except products used for Uniden's customer repair, customer service or consumer direct sales, and under which Topp was described as Uniden America's exclusive distributor for B-stock (DE # 103 at 5, ¶ 16; DE # 134 at 7, ¶¶ 14–15). The agreement did not contain a price term, and if the parties could not agree on price, there was no obligation to buy or sell (DE # 103 at 5, ¶ 18; DE # 134 at 7, ¶ 14). The agreement was for two years' duration, subject to prior termination by either party in writing upon breach by the other party. After expiration, the agreement would be automatically renewed for successive one-year terms unless either party gave written notice of its intent to terminate the agreement, at least thirty days prior to the expiration of the agreement (DE # 103 at 5–6, ¶ 19). The agreement contained an integration clause stating that the agreement constituted the entire agreement between the parties with respect to the subject matter thereof and that it superseded any prior agreements, written or oral, between the parties (DE # 103 at 6, ¶ 20).

On May 17, 2005, Uniden America formally notified Topp of Uniden America's intent to terminate the September 12, 2003 agreement on September 12, 2005, the expiration date of the two year term (DE # 103 at 7, ¶ 23; DE # 134 at 7–8, ¶ 17).

### B. The Relationship Between Topp and Uniden America Regarding A-Stock

### 1. The Relationship Between Topp and Uniden America Regarding A-Stock Before 1993

On May 14, 1990, Uniden America entered into an independent sales agreement with Topp pursuant to which Topp earned commissions in connection with the sale of certain cellular and pager products in Central and South America and the Caribbean. This agreement gave Topp the exclusive right to distribute Uniden cellular telephones and pager products in Central America, the Caribbean and South America. This agreement contemplated written arrangements for other products on a case-by-case basis. This agreement expired, by its own terms, on May 30, 1993 (DE # 103 at 1, ¶ 3; DE # 134 at 1, ¶ 2).

On February 27, 1992, Uniden America entered into an exclusive independent representative agreement with Topp giving Topp the exclusive right to distribute Uniden cellular telephones and pager products in Central America, the Caribbean and South America. Paragraph 4 of the agreement stated that there was no exclusivity granted to Topp as to any other Uniden products, and that sales of any other products would be negotiated on a case-by-case basis. The agreement was effective from January 1, 1992 through December 31, 1995. The agreement stated that it contained the entire understanding of the parties and that it superseded any other oral or written agreement (DE # 103 at 2, ¶ 4; DE # 134 at 1, ¶ 2).

### 2. The Relationship Between Topp and Uniden America Regarding A-Stock After 1993

On May 13, 1997, Al Silverberg, President of Uniden America, sent a letter in response to a May 7, 1997 inquiry from the

international account manager for the Sharper Image Company asking for Uniden America's main distributors in Latin America and the Caribbean. Silverberg wrote that Uniden America had an exclusive contractual relationship with Topp to represent Uniden in those areas (DE # 134 at 2–3, ¶ 5).

In April 2003, Uniden America and Topp discussed an exclusive distribution agreement for Uniden new product. On May 30, 2003, Al Silverberg, Uniden America's president, wrote to Jamie Topp and requested detailed marketing and other data in connection with Topp's desire for an agreement concerning new product. Topp never furnished the data requested by Uniden America (DE # 103 at 4–5, ¶ 15; at 9–10, ¶ 40).

On May 3, 2004, Brendan Morris, Uniden America's Vice President for Sales, responded to an inquiry about selling a distributor new Uniden cordless telephones into Latin America by writing that Topp was Uniden America's exclusive distributor for south of the U.S. border and that Uniden America could not pursue that business with anyone but Topp (DE # 134 at 3, ¶ 6).

On May 13, 2004, Jamie Topp wrote Silverberg stating that Topp was the exclusive distributor for new Uniden product for Latin America, that buyers thought Topp was lying to them when it stated it was the exclusive distributor, and that they had to have a definitive solution to the issue immediately (DE # 134 at 2, ¶ 4). On the same day, Silverberg responded that they needed to discuss how Topp could satisfy Wal–Mart's interest in selling Uniden products in Argentina and Brazil (DE # 134 at 2, ¶ 4).

On August 31, 2004, Silverberg wrote to Robert Rubin, Topp's CEO, advising Rubin that Uniden America and Topp had a single agreement which was the September 12, 2003 written agreement regarding B-stock. Silverberg also wrote that: Topp and Uniden America did not have an agreement for A-stock; Uniden America had refused Topp's request to include A-stock in the written B-stock agreement; while Uniden America had invited Topp many times to make a proposal for handling territorial distribution of A-stock, Topp never proposed a plan, and no agreement was ever executed (DE # 103 at 6, ¶ 22).

V. *Uniden America's Motion For Summary Judgment On Count I Should Be Granted As The Alleged Oral Exclusive Distribution Agreements Are Unenforceable Pursuant To The Statute of Frauds*

The undersigned recommends that Uniden America's motion for summary judgment on Count I be granted. Initially, the undersigned finds that there is a material issue of fact as to whether there were oral exclusive distribution agreements between the parties. However, this does not end the analysis. Oral agreements of the type alleged by Topp are barred by the Statute of Frauds in the absence of a writing which is sufficient to evidence the existence of an agreement. None of the documents relied upon by Topp are sufficient under the Statute of Frauds to indicate the existence of any enforceable exclusive distribution agreement between the parties. Thus, the undersigned finds that Uniden America is entitled to summary judgment on Count I because the Statute of Frauds bars Topp's allegations that 1) there was an oral indefinite exclusive distribution contract between Topp and Uniden America for Uniden America's new products (A–Stock) in Latin America and 2) there was an oral indefinite exclusive distribution contract between Topp and Uniden America for Uniden America's used cellular products (B–Stock) in Latin America, the United States and Canada.

Moreover, the September 12, 2003 two-year exclusive distribution contract between Topp and Uniden America for Uniden America's used cellular products in Latin America, the United States and Canada specifically stated that it terminated all other agreements between Topp and Uniden America. Thus, there was no oral agreement between the parties concerning B–Stock during the period at issue in this litigation. The undersigned also notes that in the Amended Complaint, Topp does not allege a breach of the September 12, 2003 written agreement.

### A. There Is A Material Issue of Fact As To Whether There Were Oral Exclusive Distribution Agreements Between The Parties

Initially, the record contains evidence, provided by Topp, that at all relevant times to this litigation, there was an oral exclusive distribution agreement between Topp and Uniden America concerning A-stock in Latin America. Topp has also provided evidence that between the expiration of the written B-stock distribution agreement on November 30, 1999 and the signing of a new written B-stock distribution agreement on September 12, 2003, there was an oral exclusive distribution agreement between the parties regarding all B-stock. The record also contains evidence, provided by Uniden America, that no oral exclusive distribution agreements between Topp and Uniden America existed at any time. Therefore, Uniden America is not entitled to summary judgment on the issue of whether oral exclusive distri-

bution agreements between Topp and Uniden America concerning A-stock in Latin America and all B-stock existed. However, it remains to be determined whether Uniden America was entitled to summary judgment because the alleged oral exclusive distribution agreements were unenforceable based upon the Statute of Frauds.[5]

### B. The Evidence Upon Which Topp Relies Is Insufficient To Remove The Alleged Oral Agreements From The Statute of Frauds

The writings upon which Topp relies to remove the alleged oral agreements from the Statute of Frauds are insufficient for that purpose. Furthermore, Topp may not use deposition testimony or evidence of the parties' course of conduct to take the oral contract out of the Statute of Frauds. Finally, Topp may not take the oral contract out of the Statute of Frauds by inferring terms of the oral agreement from the prior and subsequent written agreements between the parties.

#### 1. The Writings Upon Which Topp Relies To Remove The Oral Agreements From the Statute of Frauds

At the hearing on the motion, and in response to a question from the Court, counsel for Topp stated that Topp was relying on the following three writings to remove the alleged oral agreements from the Statute of Frauds.

The first writing was a letter dated May 7, 1997, from Uniden America's president,

---

5. In light of the undersigned's finding that any oral agreement was unenforceable, the undersigned will not reach Uniden America's alternative argument that there was no oral agreement in 2004 due to the May 30, 2003 letter from Uniden America's president, Al Silverberg, to Topp's president, Jamie Topp, which indicated that there was no exclusive distributor agreement for A–Stock at that

time, and put Topp on notice both that no such agreement existed at that time, and that if an oral agreement had previously existed, it was terminated. The undersigned notes, however, that at the hearing, Topp's counsel appeared to concede that the May 30, 2003 letter terminated the alleged oral A–Stock agreement (DE # 229 at 119).

Al Silverberg, to Sharper Image. This letter responded to Sharper Image's May 7, 1997 letter requesting a list of Uniden America's main distributors for Latin America and the Caribbean. In this letter, Silverberg wrote that Uniden America had an exclusive contractual agreement with Topp out of Miami to represent Uniden in those areas (DE # 135 at Tab 36).

The second writing was an email sent on May 3, 2004 from Brendan Morris, Uniden America's Vice President for Sales, to AVS, in response to AVS's May 3, 2004 email asking about selling Uniden product to a Canadian distributor who would then sell to Cuba and to other Spanish countries.[6] Morris replied that Topp was Uniden America's exclusive distributor for south of the U.S. border business and that unfortunately, Uniden America could not pursue the business opportunity offered by AVS with anyone but Topp (DE # 104 at Tab 23; DE # 135 at Tab 15).

The third writing was an email dated May 13, 2004, from Jamie Topp to Al Silverberg. This email, was one in a series of emails in which Topp complains that someone is selling Uniden products to Costco in Mexico for a lower price than Topp can. In the email, Jamie Topp stated that he believed that the company underselling Topp in Mexico was an arm of Wal Mart, and that the "[b]ottom line is that we are exclusive for [Latin America] and all of this needs to go through us. This is a huge problem. The buyers think we are lying to them when we tell them we are exclusive. We have to have a definitive solution to this now." (DE # 135 at Tab 30). Silverberg subsequently stated that he was not sure how to address the issue as Uniden America was not in contact with the Mexican company and all of Uniden's salesmen knew that they were not to sell product in Mexico (DE # 135 at Tabs 30, 32).

### 2. Uniden America Is Entitled To Summary Judgment On Count I Because Any Alleged Oral Exclusive Distribution Agreement Between The Parties Regarding A–Stock Is Unenforceable Pursuant To The Statute of Frauds

■ Uniden America is entitled to summary judgment on the issue of whether the alleged oral distribution agreement for A–Stock is enforceable. The writings relied upon by Topp are insufficient to remove the oral agreement from either of the two potentially applicable Florida Statutes of Frauds, i.e., Fla. Stat. § 725.01, the general statute, or § 672.201, governing oral contracts for the sale of goods.

In Count I of the Amended Complaint, Topp contends that, beginning in 1998, it served as Uniden America's sole independent sales representative, and subsequently, at some unstated date, Uniden America's exclusive distributor, for A–Stock cordless telephones in Latin America. Topp contends that it relied upon its exclusive agreements with Uniden America, and upon Uniden America's assurances the agreements would continue, in purchasing millions of dollars of new and refurbished products and expending considerable effort and expense in marketing Uniden America's products. Topp then claims that in late 2004, Uniden America breached the exclusive distributor agreement with Topp for new products by terminating it without advance notice, and that Uniden America then began selling new products, at substantially lower prices, both directly and through third parties, to customers originated by Topp during the existence of the exclusive distribution agreement (DE # 41 at ¶¶ 7–20). At the hearing, Topp's counsel stated that the terms of the oral A–Stock agreement were that Topp would distribute all new Uniden products in Lat-

---

**6.** AVS was Uniden America's Canadian dis-    tributor for A–Stock.

in America perpetually or until the B–Stock agreement expired (DE # 226 at 112, 117–18). Topp's counsel also stated that the price term for the A–Stock agreement would have to be drawn from the course of dealing between the parties (DE # 226 at 118).

It is undisputed that from May 1990 through December 1995, Uniden America and Topp had entered into written exclusive independent representative agreements giving Topp the exclusive right to distribute Uniden cellular telephones and pager products in Central America, the Caribbean and South America. It is also undisputed that after December 31, 1995, there was at no time a written contract between the parties concerning the distribution of A–Stock cordless telephones in Latin America.[7]

a. *The Florida General Statute of Frauds, Fla. Stat. § 725.01 Applies To The Alleged Oral Exclusive Distribution Agreement Between The Parties Regarding A–Stock*

Initially, the parties dispute which Florida statute this Court should apply to determine whether the oral agreements at issue are enforceable pursuant to the Statute of Frauds. Uniden America contends that Fla. Stat. § 725.01, the Florida general Statute of Frauds, should apply.[8] Topp contends that Fla. Stat. § 672.201, the Florida Statute of Frauds regarding contracts for a specific sale of goods, should apply.[9]

7. On March 31, 1997, Uniden America and Topp entered into a Sales Agreement in which Uniden America agreed to sell to Topp all of its A–1 refurbished Uniden branded consumer cordless telephones on a limited exclusive basis. The agreement was limited in duration to one year, subjected to prior termination by either party in writing upon the other party's breach or upon six months' written notice (DE # 103 at 2, ¶ 6; DE # 134 at 5, ¶ 9). On November 1, 1997, Uniden America entered into a Sales Agreement with Topp in which Uniden agreed to sell to Topp all of its A–1 refurbished Uniden branded consumer cordless telephones on a limited exclusive basis. The agreement stated that it was limited in duration to two years, subject to prior termination by either party in writing upon the other party's breach or upon twelve months written notice (DE # 103 at 3, ¶ 8; DE # 134 at 5, ¶ 9). This agreement lapsed, pursuant to its terms, on November 30, 1999 (DE # 103 at 4, ¶ 11; DE # 134 at 5–6, ¶ 10).

8. Fla. Stat. § 725.01 states, in pertinent part: No action shall be brought ... upon any agreement that is not to be performed within the space of 1 year from the making thereof ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged thereof or by some other person by her or him thereunto lawfully authorized.

9. Fla. Stat. § 672.201 is titled Formal Requirements; statute of frauds, and states, in pertinent part:

(1) Except as otherwise provided in this section a contract for a sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirement of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable: ...

(b) If the party against whom enforcement is sought admits in his or her pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

The undersigned finds that § 725.01, and not § 672.201, should control. In making this finding, the undersigned relies on Eleventh Circuit precedent which has applied § 725.01 applies to determine whether the oral distributorship agreements intended to last for more than one year are enforceable. In *All Brand Importers, Inc. v. Tampa Crown Distrib., Inc.*, 864 F.2d 748 (11th Cir.1989), the plaintiff alleged that it had an oral contract with the defendant for several specific sales and purchases of beer and that the defendant accepted delivery of several shipments but refused to pay for the beer. The defendant admitted the contract and also admitted that it had accepted and not paid for the beer, but pleaded set-off as an affirmative defense. The defendant also counterclaimed that the oral contract between the parties went beyond the sale and purchase of beer to provide that the defendant would be the sole distributor in its area for all of the plaintiff's products, as long as the defendant's performance was satisfactory, and that the plaintiff had breached the exclusive distributorship agreement. *Id.* at 749. The District Court granted the plaintiff's motion for summary judgment on the counterclaim under § 725.01 on the ground that the oral exclusive distributorship contract was perpetual. *Id.* at 750–51. The Eleventh Circuit affirmed the grant of summary judgment for the reasons set forth in the District Court's ordered, and specifically found that § 725.01 barred enforcement of the oral contract providing that the defendant would be the sole distributor for the plaintiff's products because the contract was intended to last longer than one year, even though the contract could have been terminated for cause within one year. *Id.* at 749. Other Federal Courts in this Circuit which have construed this issue have

also applied § 725.01 to factual situations similar to the facts here. *See also Eclipse Med. Inc. v. American Hydro–Surgical Instruments., Inc.*, 262 F.Supp.2d 1334, 1344–45 (S.D.Fla.1999) (where the plaintiffs alleged that they were orally promised a long-term perpetually renewing distribution agreement, instead of the specific two-year term stated in the written agreement between the parties, the District Court applied § 725.01 to find that the alleged oral agreement was unenforceable under the Statute of Frauds because it was not supported by a writing), *aff'd w/o op.*, 235 F.3d 1344 (11th Cir.2000); *Anthony Distrib., Inc. v. Miller Brewing Co.*, 941 F.Supp. 1567, 1574 (M.D.Fla.1996) (where the plaintiff alleged that the defendant orally promised the defendant a distributorship for Molson beer, the District Court applied § 725.01 to find that the alleged oral agreement was unenforceable under the Statute of Frauds because it was not supported by a writing); *accord Marcus v. Garland, Samuel & Loeb, P.C.*, 441 F.Supp.2d 1227, 1232 (S.D.Fla.2006) (the District Court granted summary judgment to the defendant, relying on § 725.01, to find that the Statute of Frauds barred enforcement of an oral agreement to share attorney's fees, which was not to be performed within one year).

Florida state courts which have construed this issue have also applied § 725.01 to similar factual situations. For example, in *Chong v. Milano*, 623 So.2d 536 (Fla. 4th Dist.Ct.App.1993), the appellate court, relying on § 725.01, found that the Statute of Frauds barred enforcement of an oral agreement to own and operate a recreational vehicle dealership which was to last forever. *Id.* at 537. Similarly in *Weinsier v. Soffer*, 358 So.2d 61 (Fla.3d Dist.Ct.App.), *cert. denied*, 365 So.2d 714

(c) With respect to goods for which payment has been made and accepted or which

have been received and excepted (s. 672.606).

(Fla.1978), the trial court entered judgment for the plaintiff, based on an oral agreement that the parties would obligate themselves to contribute capital to a new business and to pay the losses of that business, and also to share in the profits of the business. The appellate court reversed, relying on § 725.01, finding that the oral agreement, which was to continue indefinitely, was unenforceable pursuant to the Statute of Frauds. 358 So.2d at 63. Moreover, in *Coleman Co. v. Cargil Int'l Corp.*, 731 So.2d 2 (Fla.3d Dist.Ct.App. 1998), *rev. dismissed,* 732 So.2d 325 (Fla. 1999), the plaintiff, a distributor, sued the defendant, a manufacturer of camping supplies, for an alleged breach of the parties' oral distribution agreement. The trial court entered judgments for the plaintiff after a jury verdict. The appellate court, relying on both § 725.01 and § 672.201(1), reversed the judgment, finding that the oral distributorship contract was for a period of more than one year, and was therefore unenforceable pursuant to the Statute of Frauds. 731 So.2d at 3.

Under § 725.01, for a writing to satisfy the Statute of Frauds, it must contain all essential terms of the agreement, for example, duration, quantity, price, and geographic territory. The writings relied on by Topp do not contain all of the essential terms of a perpetual exclusive distributor agreement. At most, some of the writings refer to exclusivity and to geographic territory, but none of the writings contain any other essential terms or specifically stated whether the agreement includes new product.

In the May 7, 1997 letter, Uniden America's president responded to Sharper Image's inquiry by stating that Uniden America had an exclusive contractual agreement with Topp out of Miami to represent Uniden in Latin America. This letter arguably refers to A–Stock, and contains the essential terms of exclusivity and geographic territory, but does not contain any terms regarding duration, quantity, or price. The letter also was not exchanged by Uniden America and Topp, but was a letter from Uniden to a third party. It is difficult to see how a writing from Uniden to a third party would be sufficient evidence of a contract between Uniden and Topp. Furthermore, when the letter was written, Uniden America and Topp had written exclusive agreements concerning A–1 stock and B stock. Also, in 1992, Uniden America and Topp had signed a written agreement which had expired at the end of 1995 whereby Topp was the exclusive distributor in Latin America for Uniden pagers and cellular telephones. The May 7, 1997 letter could have been referring to any or all of those written agreements.

In the May 3, 2004 email, Uniden America's Vice President for Sales responded to AVS that Topp was Uniden America's exclusive distributor for south of the U.S. border business and that unfortunately, Uniden America could not pursue the business opportunity offered by AVS (selling cellular telephones that would end up in Latin America), with anyone but Topp (DE # 104 at Tab 23; DE # 135 at Tab 15). Again, this communication arguably concerns A–Stock, and also contains the essential terms of exclusivity and geographic territory, but it does not contain any terms regarding duration, quantity, or price. The email again also was not a communication between Uniden America and Topp, but was sent by Uniden to a third party.

Finally, Topp contends that Uniden did not object to Topp's May 13, 2004 confirmatory email, which stated that Topp had an exclusive distributorship agreement for A-stock in Latin America. from Jamie Topp to Al Silverberg. This email was one in a series of emails in which Topp complained that someone was selling Uniden

products to Costco in Mexico for a lower price than Topp could. In this email, Jamie Topp complained that was being undersold in Mexico and that the "[b]ottom line is that we are exclusive for [Latin America] and all of this needs to go through us. This is a huge problem. The buyers think we are lying to them when we tell them we are exclusive. We have to have a definitive solution to this now." (DE # 135 at Tab 30). Section 672.201(2) states that a written, unobjected-to confirmation must be a) sufficient under the Statute of Frauds; and b) issued within a reasonable time after the formation of the oral contract.

Initially, Topp's email is insufficient to take the alleged oral agreement out of the Statute of Frauds. The email appears to refer to A–Stock and contains the essential terms of exclusivity and geographic territory, but it does not contain any terms regarding duration, quantity, or price. Moreover, in response to this email, Silverberg did not expressly or implicitly accept Topp's assertion that it was exclusive for Latin America. Instead, Silverberg obliquely replied that he was not sure how to address the issue as 1) Uniden America was not in contact with the Mexican company and 2) all of Uniden's salesmen knew that they were not to sell product in Mexico.

The undersigned concludes that the failure of Topp's email to contain sufficient terms as required by the Statute of Frauds, combined with the ambiguity of Uniden's response, result in the failure of this writing, even when combined with the other writings, to satisfy the Statute of Frauds. Moreover, Topp's email and Uniden's response must be considered in context. During 2003 and 2004, the parties were attempting to negotiate written exclusive distribution agreements for A–Stock as well as for B–Stock, but these discussions did not lead to a written agreement. For example, on May 30, 2003, Al Silverberg wrote Jamie Topp stating, in pertinent part, that: 1) the territory for which Topp was requesting an exclusive for A–Stock was extensive; 2) Uniden currently only had a similar agreement in place for Canada; and 3) "[y]our territory request is huge, and before we make any commitment to exclusivity, the above issues have to be addressed and satisfied" (DE # 135 at Tab 12).[10] On June 16, 2004, less than one month after the email upon which Topp relies to establish the oral contract, David Topp emailed Al Silverberg regarding a possible solution of the Lectron matter, in which Topp suggested, among other ideas, "an exclusive agreement on new merchandise for Latin America including Puerto Rico and also Sam's, Walmart, Costco, etc. in all these Latin American countries" (DE # 135 at Tab 23). On June 28, 2004, Robert Rubin, Topp's CEO, emailed Al Silverberg regarding a possible solution of the Lectron matter, suggesting that Uniden establish Topp as Uniden's exclusive representative in Brazil and Mexico (DE # 135 at Tab 26). Indeed, the record contains many unexecuted agreements between Topp and Uniden for A–Stock and B–Stock which were drafted during the period between March 31, 1998, the expiration of the March 1997 B–Stock written agreement, and September 12, 2003, the date which the parties signed a written B–Stock agreement. See DE # 104 at Tabs 8–11. Therefore, it is unreasonable for Topp to attempt to create an issue of material fact as to whether there was an enforceable oral distribution agreement for A–Stock by relying on Uniden's failure to expressly state in its re-

---

10. At the hearing, Topp's counsel appeared to concede that this letter terminated any oral A–Stock agreement (DE # 226 at 119).

sponse to Topp's May 13, 2004 email that there was no exclusive distribution agreement for A–Stock.

Furthermore, Topp did not send the email within a reasonable time after the alleged formation of the oral contract. Topp appears to allege that the oral distribution agreement for A–Stock began in 1998 or 1999. Topp sent the relevant email in May 2004. The undersigned finds that, under § 672.201(2), five years after the formation of an alleged contract is not a reasonable period of time within which to confirm the oral agreement.

Moreover, numerous cases cited by Uniden America support the finding that the writings relied on by Topp are insufficient to take the alleged oral agreement out of the Statute of Frauds. In *Craig R. Weiner Associates, Inc. v. Sherden*, 444 So.2d 431 (Fla. 4th Dist.Ct.App.1983), the plaintiff, a prospective purchaser of a shopping center, sent an offer letter to the partnership that owned the shopping center. The offer letter was signed by the defendant, one of the six partners who owned the center, with the consent of the other five partners. The plaintiff subsequently sued for breach of contract. The appellate court affirmed the trial court's grant of summary judgment for the defendant, relying on § 725.01, finding that the offer letter was not sufficiently detailed to satisfy the Statute of Frauds. The Court noted that while the letter included a description of the property, its price, and the financing arrangements, the letter did not: 1) include the details of the financing arrangement; 2) make clear the extent of inspections by the prospective purchaser and the effect of the inspection on the purchaser's duties; or 3) mention existing tenants' leases, what warranty documents the vendor would be required to provide or the allocation of closing costs.

Similarly, in *Ginsberg Machine Co. v. J. & H. Label Processing Corp.*, 341 F.2d 825 (2d Cir.1965), the Second Circuit Court of Appeals affirmed a directed verdict for the defendant based on the Statute of Frauds. The plaintiff claimed that he and the defendant's president had made a vague oral agreement that the plaintiff would have an exclusive sales agreement to sell the defendant's machines. The Second Circuit found that the oral agreement was unenforceable pursuant to the New York Statute of Frauds, and that a subsequent letter between the parties was insufficient to take the oral agreement out of the Statute of Frauds because 1) the letter did not contain a duration term for the exclusive agreement; and 2) the letter was, at most, the outline of a working agreement and was not a contract spelling out the duties of the parties. Again, applying a similar standard, in *Cohabaco Cigar Co. v. United States Tobacco Co.*, 1999 WL 988805 (N.D.Ill.1999), the District Court held that the Illinois Statute of Frauds barred the claim of the plaintiff, a cigar distributor, that an oral requirements contract existed with the defendant, a cigar manufacturer. The Court found that the four letters submitted by the plaintiff did not evidence the existence of a contract. The Court found that the first letter from the defendant contained no reference to any agreement between the parties and did not contain any terms, but just stated that the defendant was enthusiastic about supplying the plaintiff with premium cigars. The Court also found that the second letter submitted, written by the defendant after the defendant had stated it was not interested in a joint venture with the plaintiff, merely suggested that the defendant would supply some cigars to the plaintiff. In the third letter submitted the defendant did not agree to supply the plaintiff's needs, and did not indicate that the plaintiff was obligated to place any orders with the defendant. Finally, the fourth letter, written by the plaintiff, was insufficient because it did

not indicate it was confirming any prior agreement and did not obligate the plaintiff to exclusively deal with the defendant. *See also First Guaranty Corp. v. Palmer Bank and Trust Co. of Fort Myers, N.A.,* 405 So.2d 186 (Fla.2d Dist.Ct.App.1981) (to comply with Statute of Frauds requiring a written contract guaranteeing debt of another to be signed by person to be charged, the writing must contain the essential terms of the transaction).

Moreover, the undersigned finds unsupported Topp's assertion that Fla. Stat. § 672.201, and not § 725.01, controls its indefinite oral exclusive distributorship claim. Section 672.201 concerns only specific transactions for goods, not the perpetual oral distributorship agreement which Topp alleges here. Section 672.201 states that it applies to contracts for the purchase of goods worth $500 or more. Indeed, § 672.201(1) states in part that "[a] writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing." None of the writings upon which Topp relies refers to either a specific sale of goods or to the purchase of more than $500 of goods. Thus, under § 672.201, the alleged oral agreement for A–Stock would not be enforceable for any specific amount of goods.

In support of its contention that § 672.201 controls under the facts in this case, Topp primarily relies on *American Zurich Insurance Co. v. St. George Crystal, Ltd.,* 870 So.2d 243 (Fla.2d Dist.Ct. App.2004). However, *American Zurich* is distinguishable from the instant case as the contract at issue there involved an indemnity term appearing on a purchase order, not, as in the instant case, an oral, perpetual exclusive distributor agreement.

In *American Zurich,* the defendant was the exclusive manufacture of glass candle holders for a company insured by the plaintiff, an insurance company. One of the candle holders which the defendant had supplied to the plaintiff's insured broke in half and caused injury to a customer. The customer filed a law suit against the plaintiff's insured, which the plaintiff settled. The plaintiff then sued the defendant for contractual indemnity, based upon the terms and conditions of purchase which appeared on the reverse side of a purchase order that the plaintiff's insured routinely used to purchase candle holders from the defendant. The defendant, relying on § 725.01, moved for summary judgment alleging that the contract was unenforceable because the defendant had not signed it and it was a promise to indemnify the plaintiff's insured. The plaintiff asserted that § 672.201 should apply because the alleged agreement was a contract for the sale of goods. The trial court granted summary judgment for the defendant, finding that § 725.01 barred the plaintiff's claim for indemnification. *Id.* at 244. The appellate court reversed, finding that the contract in question was for the sale of goods, so that § 672.201, not § 725.01, applied. *Id.* at 245. The appellate court further stated found it would not consider whether the agreement was enforceable under § 672.201 because the defendant had not pleaded § 672.201 as a defense, and that issue could be considered on remand. *Id.* at 245.

*American Zurich* is distinguishable from the instant case, as it held that § 672.201 applied to a dispute involving the terms of a written contract for the sale of goods. Unlike the instant case, *American Zurich* did not involve a claim for breach of an alleged perpetual oral exclusive distributorship agreement, which both the Federal and Florida courts have considered under § 725.01.

However, the undersigned further finds that even applying § 672.201, the alleged oral contracts are still unenforceable, as

none of the documents relied upon by Topp, either singly or collectively, are sufficient to indicate the existence of any enforceable exclusive distribution agreement between the parties. Simply, Topp's argument also fails under § 672.201 because, as previously stated, none of the four writings upon which it relies contains a quantity term.

Under § 672.201, an oral agreement to sell more than $500 of goods is enforceable if the agreement is evidenced by a writing which 1) evidences a contract for the sale of goods; 2) is signed by the party to be charged and 3) specifies a quantity. *See Office Pavilion South Florida v. ASAL Products*, 849 So.2d 367, 371 (Fla. 4th Dist. Ct.App.2003). Even if § 672.201 applies in this case, Topp has not supplied any writing necessary to avoid the application of the Statute of Frauds; one which contains the necessary quantity requirement. For example, in *Office Pavilion*, there was a written contract under which the plaintiff agreed to purchase an unstated number of chairs from the defendant at a stated price and under a stated delivery schedule. *Id.* at 368. The plaintiff subsequently asked the defendant to provide a large number of chairs, and the defendant said it could not provide the chairs. *Id.* at 368–69. The plaintiff sued for breach of contract and the trial court entered judgment for the plaintiff in the amount of $4,000,000.00. *Id.* at 369. The appellate court reversed, finding, *inter alia*, that the written contract for the purchase of chairs was unenforceable under § 672.201 because it did not contain a quantity term, that is, the amount of chairs which the plaintiff was required to purchase. The appellate court also specifically noted that under § 672.201(3)(b), a contract for the sale of goods is not enforceable beyond the quan-

tity of goods admitted in the writing. *Id.* at 370.

Even the cases cited by Topp do not support its position that the writings in this case would take the alleged oral agreement out of the Statute of Frauds under § 672.201. For example, Topp primarily relies on *Riegel Fiber Corp. v. Anderson Gin Co.*, 512 F.2d 784 (5th Cir. 1975) to support its position that the writings in this case are sufficient to remove the oral agreement from the Statute of Frauds (DE # 133 at 7).[11] However, *Riegel* is distinguishable from the facts of this case because the writing there was a written sales agreement, which was signed, attested, and contained a quantity term. Here, the record contains no writing containing a quantity term or any relevant writing signed by both parties.

Specifically, in *Riegel*, in late March 1973, the plaintiff, a fiber company, entered into certain forward contracts with the defendants, cotton gin companies. The parties agreed on a price of 32 cents a pound. 512 F.2d at 785–86. The defendants would sell some of the cotton they grew, and they would also sell cotton grown by individual farmers paying 32 cents a pound. To make contracts with the individual farmers, the defendants used contract forms which the plaintiff provided to the defendants. During the summer of 1973, the price of the kind of cotton stated in the contracts had risen to 81 cents a pound. The plaintiff then sued the defendants for a declaratory judgment that the contracts were valid and enforceable. 512 F.2d at 786. At trial, the Court granted the defendants' motion for involuntary dismissal finding, *inter alia*, that the contracts between the plaintiff and the defendants did not contain a quantity term sufficient to satisfy the Statute of Frauds.

---

**11.** Topp correctly states that *Riegel* is binding on this Court as a decision from the former Fifth Circuit. *See Bonner v. City of Prichard,* *Ala.,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

512 F.2d at 787. The Fifth Circuit reversed the lower court, finding that the contracts were sufficiently specific to satisfy the Alabama Statute of Frauds relating to a contract for the purchase of goods, as the quantity term stated in the contract was not too indefinite to be enforceable. 512 F.2d at 788–89.[12] In reversing the trial court, the Fifth Circuit noted that the parties had reduced their entire agreement to written form, and that the writings were signed, attested, and contained a quantity term. 512 F.2d at 788–89. Here, on the contrary, the parties have not reduced their entire agreement to written form, and the record contains no writing containing a quantity term, and no relevant writing signed by both parties. Thus, Topp's reliance on *Riegel* is misplaced, and under the holding of *Riegel,* the writings put forward by Topp are insufficient under either § 672.201 or § 725.01.

Topp's reliance on *American Original Corp. v. Legend, Inc.,* 652 F.Supp. 962 (D.Del.1986), fails for the same reason. In *American Original,* the plaintiff, a clam processor, entered into a contract with the defendants, who were clammers. A letter from the plaintiff to the defendants and signed by all parties evidenced the oral agreement. *Id.* at 963–64. The letter stated that the plaintiff agreed to purchase from the defendants at a stated price, a maximum amount of quahogs which the defendants had caught in a specific area, during a specific period. In consideration of that agreement, the defendants agreed to sell to the plaintiff at a stated price, all surf clams caught by the defendants in New England during a stated period. *Id.*

at 971. After the plaintiff sued for breach of contract, arguing that the defendants had sold surf clams to competitors, the defendants filed a counterclaim alleging breach of contract. The district court denied the plaintiff's motion to dismiss the counterclaim, finding, *inter alia,* that the contract was valid under the Delaware Statute of Frauds referring to contracts for the sale of goods, finding that the use of the terms "all surf clams", and a maximum amount of quahogs, in the written agreement between the parties, was sufficient to state a quantity term and take that portion of the contract out of the Statute of Frauds. *Id.* at 966, 967–68. Again, in this case, there is no written agreement at all between the parties regarding A–Stock, and the record contains no writing which states, for example, that Topp must purchase all A–Stock from Uniden America, or indeed, any specific quantity from Uniden America. Therefore, even applying § 672.201, Uniden America is entitled to summary judgment as to Count I.

b. *Topp May Not Use Deposition Testimony Or Evidence of The Parties' Course of Conduct To Take The Oral Contract Out of the Statute of Frauds*

Topp also proffers the following evidence of the quantity term is: 1) the oral deposition testimony of its former President, Jamie Topp and 2) deposition testimony from Al Silverberg in which Silverberg allegedly confirmed the existence of an oral exclusive B–Stock agreement during the period when there was no written contract in force.[13] Topp also contends

---

**12.** The contracts at issue stated that the buyer agreed to purchase and take delivery from the seller, and the seller agreed to sell and deliver to the buyer, all of the acceptable cotton produced during the crop year 1973 on certain named acreage, and none other. 512 F.2d at 788, n. 7.

**13.** In any event, in his deposition testimony, Silverberg did not confirm the existence of an oral exclusive B–Stock agreement during the period when no written agreement was in place, but discussed a May 3, 2004 email from Uniden America Vice President of Sales Brendan Morris to a representative of AVS in

that Uniden America's course of dealing, combined with Uniden's communications to third parties referring to Topp as an exclusive distributor, creates at least an inference that an enforceable oral agreement for new products was in place (DE # at 10).

The deposition testimony of Jamie Topp and Al Silverberg and the course of conduct between the parties are irrelevant to the requirement of the Statute of Frauds that a writing is required to make enforceable an oral agreement. Similarly, in *Craig R. Weiner Associates, Inc. v. Sherden*, the appellate court began its Statute of Frauds analysis by stating that while the letter between the parties which the plaintiff sought to have declared a binding contract displayed the parties' clear intent to be bound, this question was distinct from the question of whether the letter was sufficient under the Statute of Frauds to make the oral agreement between the parties enforceable. The Court went on to note that while the Statute of Frauds presumes that an oral contract was intended and was executed, the issue becomes whether the writing is sufficient to make the oral agreement enforceable, not, for example, whether letter evidenced the parties' intent to make a contract, or whether the signature of the defendant was sufficient to bind his other five partners. 444 So.2d at 432. Subsequently, the appellate court found that the letter between the parties contained insufficient detail to satisfy the requirements of the Statute of Frauds. *Id.* at 432–34, *citing Socarras v. Claughton Hotels, Inc.*, 374 So.2d 1057, 1059 (Fla.3d Dist.Ct.App.1979); ("the written memorandum must disclose all of the essential terms of the sale and these terms may not be explained by resort to parol evidence").

Topp relies on *Impossible Elec. Tech. v. Wackenhut Prot. Systems*, 669 F.2d 1026 (5th Cir.1982), to support its position that oral testimony and the parties' course of dealing are admissible to determine whether the writings at issue remove the alleged oral agreement from the Statute of Frauds. Topp's reliance is misplaced, as *Impossible Electronic Techniques* is factually distinguishable from the instant case. In *Impossible Electronic*, the plaintiff, a maker of security equipment, sued the defendant-ultimate customer for breach of an oral contract to buy security equipment. The defendant denied that a contract had been made, interposed the Statute of Frauds as a defense, and was granted summary judgment by the district court. *Id.* at 1028. In reversing this decision, the Fifth Circuit provided a detailed statement of the facts. After the defendant stated that it would need a local company to install and maintain the security system, the plaintiff recommended a local dealer of the plaintiff's equipment. The defendant subsequently accepted a purchase order sent by the local dealer which listed the defendant as the customer of both the dealer and the plaintiff. The plaintiff then sent a purchase order to the local dealer for the same items and quantities listed in the purchase order which the local dealer had sent to the defendant. *Id.* at 1029. The defendant subsequently sent a letter to the local dealer cancelling its purchase order, and the local dealer then notified the plaintiff that it was cancelling its purchase order. *Id.* at 1029–30.

In reversing the grant of summary judgment, the Fifth Circuit found, *inter alia* that the purchase order between the plaintiff and the local dealer was sufficient to take the alleged oral agreement the plain-

which Morris referred to Topp as "our exclusive distributor for south of the U.S. border" which was sent during a period when the

September 12, 2003 written exclusive distributor agreement as to B–Stock was in force.

tiff and the defendant out of the Statute of Frauds, § 672.201. The court noted that the purchase order was signed by a representative of the defendant and specified the quantity of goods to be sold. The Court then stated that Florida law permitted parol evidence to explain and identity the contract to which a particular document referred, and so the history of the negotiations, testimony regarding the negotiations, and the course of dealings among the parties supported an inference, at least, that the purchase order reflected an agreement between the plaintiff and the defendant. *Id.* at 1034.

There is an important factual difference between the instant case and *Impossible Electronic.* In this case, the writings relied on by Topp are insufficient to take the alleged oral contract out of the Statute of Frauds, even under § 672.201, because none of the writings contain the required quantity term. In *Impossible Electronic,* there was a writing which was sufficient to take the oral agreement out of the Statute of Frauds because it contained a quantity of goods and was signed by the defendant. The holding in *Impossible Electronic* was that given the existence of a sufficient writing satisfying the Statute of Frauds, the Court, pursuant to Florida law, would allow the use of parol evidence to explain whether the sufficient writing referred to a contract between the plaintiff and the defendant.

Therefore, the undersigned finds that Topp may not use deposition testimony and the course of dealing between the parties to take the alleged oral agreement out of the Statute of Frauds.

c. *Topp Cannot Rely On The Previous And Subsequent Written Agreements To Supply Any Missing Terms To Take The Oral Contract Out of the Statute of Frauds*

Topp further argues that the oral agreements are enforceable because this Court should infer that the oral agreements contain the written quantity terms contained in the 1997 written agreements regarding A–1 stock, the March 31, 1997 written agreement regarding B–Stock, all of which had expired by November 30, 1999, and the September 12, 2003 written agreement. It is undisputed that all of the above written agreements contain merger clauses in which the parties agreed that the specific agreement superseded any prior agreements, written or oral, with respect to the subject matter of that agreement.

Topp has not provided any authority which supports its position that the requirement of a writing can be satisfied by a prior lapsed contract, or by a subsequent contract that does not refer in any way to a prior oral agreement. Thus, the undersigned concludes that, in the absence of other evidence, it is not appropriate to infer that the written quantity terms contained in the written agreements should carry over into the alleged oral agreements.[14]

3. *The Alleged Oral Contract Concerning B–Stock Is Unenforceable*

The undersigned also finds that there was no enforceable oral contract regarding B–Stock between the parties at any time relevant to this litigation. There could not

---

**14.** At the deposition of Harry Wilkins, Topp's litigation consultant, Topp stipulated that it would not use Wilkins as a direct witness in this case, and that Wilkins had no personal knowledge of the facts at issue in this litigation. Therefore, the undersigned will not consider the evidence provided by Wilkins, and relied upon by Topp, in its opposition to summary judgment. *See Citizens Concerned About Our Children v. School Bd. of Broward County, Fla.,* 193 F.3d 1285, 1295 n. 11 (11th Cir.1999) ("Even on summary judgment, a court is not obligated to take as true testimony that is not based on personal knowledge").

be an enforceable oral contract regarding B–Stock during the period when the written agreements regarding B–Stock were in force, March 1997 through March 1998 and September 2003 through September 2005, as the written agreements contained integration clauses. Moreover, the only writing relied upon by Topp which was written during the period from April 1998 through September 2003, the May 15, 2003 letter, is insufficient to remove any oral agreement regarding B–Stock during that period from the Statute of Frauds, as this writing does not refer to B–Stock and does not contain any of the necessary terms.

In Count I of the Amended Complaint, in addition to its A–Stock claims, Topp also contends that beginning in 1996, Topp purchased, on an exclusive basis, Uniden America's B–Stock products returned from Uniden America's United States distributors and that Topp then exclusively distributed the refurbished B–Stock products to retailers in the United States, Canada and Latin America. Topp contends that it relied upon its exclusive agreements with Uniden America, and upon Uniden America's assurances the agreements would continue, in purchasing millions of dollars of new and refurbished products and expending considerable effort and expense in marketing Uniden America's products. Topp then claims that in late 2004, Uniden America breached its exclusive distributor agreement with Topp for A–Stock in Latin America by terminating it without advance notice, and that Uniden America then began selling A–Stock, at substantially lower prices, both directly and through third parties, to customers originated by Topp during the existence of the exclusive distribution agreement. Topp further alleges that these actions by Uniden America effectively destroyed Topp's ability to sell refurbished B–Stock Uniden America products in Latin America and effectively breached the exclusive distribution agreement for the sale of refurbished B–Stock

Uniden America products. Topp also contends that Uniden America breached the exclusive distribution agreement for the sale of refurbished B–Stock Uniden America products by skimming off the most lucrative B-stock product for its own use, and leaving the less desirable B-stock product for Topp (DE #41 at ¶¶ 7–20). At the hearing, Topp's counsel stated that the terms of the oral B–Stock agreement which was allegedly in force between 1999 and 2003 was that Topp had the right and obligation to purchase all of Uniden America's B–Stock, and that Uniden America had the obligation to sell Topp all of its B–Stock except for those categories carved out in the September 12, 2003 written agreement, and that the price term in the September 12, 2003 written agreement was the price term for the oral B–Stock agreement (DE #226 at 88–92).

It is undisputed that from March 31, 1997 through March 31, 1998, there was a written contract between Topp and Uniden America for the exclusive distribution of Uniden America B–Stock cordless telephones in Latin America. It is also undisputed that on September 12, 2003, Topp and Uniden America executed a two-year written contract for the exclusive distribution of Uniden America B–Stock cordless telephones in Latin America.

The undersigned finds, therefore, that from March 31, 1997 through March 31, 1998, and from September 12, 2003 through September 12, 2005, there was no oral exclusive agreement between the parties regarding B–Stock. The March 31, 1997 written B–Stock agreement and the September 12, 2003 written B–Stock agreement each extinguished any prior oral agreement relating to B–Stock, as each agreement stated that it constituted the entire understanding between the parties with respect to the subject matter covered and superseded any prior agree-

ments, written or oral, with respect thereto. *See Aly Handbags, Inc. v. Rosenfeld,* 334 So.2d 124, 126 (Fla.3d Dist.Ct.App. 1976); *accord Waters v. Sundstrom,* 386 So.2d 54, 57 (Fla.2d Dist.Ct.App.1980); *accord Eclipse Medical Inc.,* 262 F.Supp.2d at 1343–44 (the District Court held that it was unreasonable for the plaintiff to rely on the defendant's alleged oral promise to perpetually renew annually the written agreement based on performance where the written agreement specifically and unambiguously created only a single renewal term based on performance).

Moreover, the undersigned finds that from March 31, 1998 through September 12, 2003, any oral exclusive agreement between the parties regarding B–Stock was unenforceable pursuant to the Statute of Frauds. None of the three writings relied on by Topp was written during the relevant period, and none of them refer to B–Stock or contain any terms regarding an exclusive contract for B–Stock. The writing of May 7, 1997 cannot be evidence of an oral agreement regarding B–Stock, as the March 31, 1997 written agreement regarding B–Stock was in force at that time. The writings of May 3, 2004 and May 13, 2004 also cannot be evidence of an oral agreement regarding B–Stock, as the September 12, 2003 written agreement regarding B–Stock was in force at that time.[15]

At the hearing, Topp's counsel stated that Topp relied on deposition testimony, the contents of an affidavit, and the course of dealing between the parties to support Topp's position that the terms of the oral B–Stock agreement were the terms of the September 12, 2003, written B–Stock agreement. For the reasons previously stated, in the absence of a writing suffi-

cient to take the alleged oral B–Stock agreement out of the Statute of Frauds, Topp may not rely on deposition testimony, assertions contained in an affidavit, or the course of dealing between the parties, to take the alleged oral B–Stock agreement out of the Statute of Frauds.

4. *Topp Cannot Use Promissory Estoppel To Evade The Statute of Frauds*

Topp cannot use promissory estoppel to evade the Statute of Frauds. In paragraph 11 of the Amended Complaint, Topp seeks to recover the loss of its entire investment in facilities in Mexico as well as operating losses in Mexico since 1996 based on "oral assurances" that Uniden America would sell its B–Stock cordless telephones to Topp during the period in which the parties had no written agreements. Insofar as Topp is relying on promissory estoppel in paragraph 11, Florida law states, and Topp did not dispute at the hearing, that promissory estoppel may not be used to circumvent the Statute of Frauds. *See Coral Way Properties, Ltd. v. Roses,* 565 So.2d 372 (Fla.3d Dist.Ct. App.1990), *citing Tanenbaum v. Biscayne Osteopathic Hosp., Inc.,* 190 So.2d 777, 779 (Fla.1966); *see also Eclipse Medical Inc.,* 262 F.Supp.2d at 1352.

B. *Uniden America's Motion For Summary Judgment As To Count II Concerning the Tortious Interference Allegations regarding Costco Mexico Should Be Granted As The Economic Loss Rule Bars Raising This Breach of Contract Issue As a Tort*

■ Uniden America's motion for summary judgment on that portion of Count II

---

**15.** Topp does not dispute that at deposition it conceded that: the September 12, 2003 written B–Stock Agreement contained a two-year term; Uniden America properly exercised its

right not to renew the agreement; and it is not alleging a breach of the September 12, 2003 agreement.

concerning alleged tortious interference with Topp's business relationship with Costco Mexico should be granted as this claim is barred by the economic loss rule.

In Count II, Topp alleges that Uniden America tortiously interfered with Topp's advantageous business relationship with Costco Mexico, in that in the fall of 2004 it obtained two orders totaling nearly $1,000,000.00 from Costco Mexico, and that, in an attempt to sabotage the relationship between Topp and Costco Mexico, Uniden America, in bad faith, failed to timely and completely fulfill an order procured by Topp for several hundred thousand dollars of Uniden America A–Stock product meant for Costco Mexico. As a result, Costco Mexico cancelled its order, refused to do more business with Topp, and began to deal directly with Uniden America (DE # 41 at ¶¶ 21–30).

The economic loss rule holds that any damages stemming from Uniden America's alleged tortious interference with Topp's contract with Costco Mexico are subsumed with the damages that would flow from Uniden's alleged breach of its contract with Topp to deliver product meant for Costco Mexico. *See Eclipse Med. Inc. v. American Hydro–Surgical Instruments., Inc.,* 262 F.Supp.2d 1334, 1356–57 (S.D.Fla.1999), *aff'd w/o op.,* 235 F.3d 1344 (11th Cir.2000).

In *Eclipse,* the plaintiffs, medical supply distributors, brought an action against their suppliers, the defendants, alleging breach of contract, fraudulent inducement, breach of fiduciary duties, promissory estoppel, tortious interference with business relationships, and violations of state consumer protection statutes.[16] The District Court granted summary judgment to defendants. The Court found, as to the first portion of the tortious interference issue,

that the plaintiffs' claim that the defendants' direct sales to customers within the plaintiffs' exclusive territories simply restated the plaintiff's claim for breach of contract and was barred by Florida's economic loss rule. 262 F.Supp.2d at 1353–55. The Court then found, as to the second portion of the tortious interference issue, that the plaintiffs' claim that defendants' interfered by delay in delivering to plaintiffs or refusing to sell products to plaintiffs were also barred by the economic loss rule because the only reason that the defendants would have any obligation regarding timely shipment of goods would arise from the contract between the parties, and the economic loss rule barred the plaintiffs from relabeling breaches of contract as tortious conduct. *Id.* at 1356–57.

The undersigned finds that *Eclipse* is on point with the facts of this case and adopts its reasoning. Florida's economic loss rule bars Topp from bringing a claim against Uniden America for tortious interference with Topp's relationship with Costco Mexico. Topp can only bring a claim against Uniden America for breach of contract for failing to timely deliver product to Topp which Topp intended to sell to Costco Mexico, and for Uniden America's subsequent direct sale of A–Stock product to Costco Mexico.

Topp misplaces its reliance on *Gossard v. Adia Services, Inc.,* 723 So.2d 182 (Fla. 1998), to support its position that it can bring this tortious interference claim. In *Gossard,* in May 1986, a franchiser, Nursefinders, granted an exclusive franchise for the West Coast of Florida to the plaintiff. The franchise agreement with the plaintiff provided that Nursefinders would not pro-

16. In *Eclipse,* the existence of a written exclusive distribution contract was undisputed.

262 F.Supp.2d at 1338–39.

vide similar services to the plaintiff within the franchise territory. In early 1987, the defendant purchased Nursefinders. In June 1988, the defendant also purchased Star–Med, a company which provided similar services to Nursefinders within the plaintiff's franchise territory. The plaintiff then sued the defendant for tortiously interfering with the contract between the plaintiff and Nursefinders. The United States Court of Appeals for the Eleventh Circuit certified to the Florida Supreme Court the question of whether the plaintiff had a claim for tortious interference under the facts of this case. *Id.* at 183. The Florida Supreme Court found that by the defendant's purchase of Star–Med, the defendant knowingly caused Nursefinders to breach its contract with the plaintiff, and so the plaintiff had made a prima facie case of tortious interference against the defendant. *Id.* at 184–85.

*Gossard* is factually distinguishable from this case. In *Gossard,* the plaintiff could not sue the defendant for breach of contract because there was no contract between the defendant and the plaintiff; the only contract was between the defendant's daughter company, Nursefinder, and the plaintiff. Thus, the plaintiff had no breach of contract claim against the defendant, and the economic loss rule did not apply.

However, in the instant case, Topp and Uniden American had a contract regarding the sale of particular goods for Costco Mexico. Topp's only recourse for Uniden America's failure to timely deliver the goods at issue is for breach of the contract with Uniden for the sale of those particular goods.[17]

Therefore, the undersigned recommends that summary judgment be granted in favor of Uniden America as to the portion of Count II which deals with Uniden America's alleged tortious interference with Topp's business relationship with Costco Mexico.[18]

C.  *Uniden America's Motion For Summary Judgment On Count III Should Be Granted As The Economic Loss Rule Bars Raising This Breach of Contract Issue at a Tort and, Pursuant To Count I, There Is No Enforceable Oral Exclusive Distribution Agreement For Used Uniden America Cellular Telephones*

The undersigned recommends that Uniden American be granted summary judgment as to Count III as Topp's fraud claim is barred by the economic loss rule.

■ In Count III of the Amended Complaint, Topp contends that over the course of Uniden America's business relationship since 1996, Uniden America continuously falsely represented to Topp that it was supplying Topp with all of the B-products Uniden obtained in that time period, and that at the time Uniden America made those statements, Uniden knew that the statements were false because it was skimming the best B-products off for its own benefit on resale, leaving to Topp the B-products of lesser value. Topp alleges that Uniden America intended that Topp should rely on these false statements, and

---

17.  The undersigned notes that Topp has not sued for breach of this particular contract.

18.  Based upon this recommendation, the undersigned will not reach Uniden America's alternative arguments that 1) any tortious interference claim belongs to Topp–Mexico, a separate and distinct legal entity, not to Topp, Inc., and 2) the tortious interference claim should be dismissed because Uniden America was the source of the business opportunity allegedly interfered with (DE # 102 at 21).

that Topp, oblivious to the skimming, reasonably relied on these misrepresentations to its detriment by continuing to do business with Uniden America, buying B-product from Uniden America, and investing in facilities for the refurbishing of Uniden America B-product (DE # 41 at ¶¶ 31–35).

Initially, as the undersigned has recommended that Uniden America be granted summary judgment as to Count I on the ground that there was no oral exclusive distributor agreement as to B–Stock between Topp and Uniden, Topp's allegations of fraud involving the non-existent contract must fail. Topp's contention that it should be able to maintain its fraud claim as an alternative to its oral contract claim is an attempt to evade the Statute of Frauds, and, as such, it is recommended that it be rejected. *See Eclipse Med. Inc.,* 262 F.Supp.2d at 1345, *citing Ostman v. Lawn,* 305 So.2d 871 (Fla.3d Dist.Ct.App.1974).

Assuming that Topp is alleging that Uniden America fraudulently induced it to enter a contract by making misleading statements regarding Uniden America's intention to perform the terms of the contract, the undersigned finds that the economic loss rule bars such a claim. In Count I of the Amended Complaint, Topp pled this theory as a breach of contract, contending that Uniden America breached the oral indefinite exclusive distribution agreement for the sale of refurbished B–Stock Uniden America products by skimming off the most lucrative B-stock product for its own use, and leaving the less desirable B-stock product for Topp (DE # 41 at ¶ 18). Thus, by pleading this theory in the alternative as a breach of contract in Count I and as fraud in Count III, granting summary judgment on Count III goes to the very heart of the economic loss rule.

This finding is supported by recent rulings of this Court. *See Behrman v. Allstate Life Ins. Co.,* 388 F.Supp.2d 1346, 1349 (S.D.Fla.2005), *aff'd* 178 Fed.Appx. 862 (11th Cir.2006). In *Behrman,* the plaintiff alleged, in part, that the defendants had fraudulently induced him to enter certain variable annuity contracts by orally guaranteeing that the annuity contracts would not endanger the plaintiff's "nest egg". In granting the defendants' motion to dismiss, this Court found that the economic loss rule barred the plaintiff's fraudulent inducement claim because the allegedly fraudulent pre-contract statements concerned the same injury that the plaintiff had pleaded in his breach of contract claim, and, thus, were not extraneous to the alleged breach of contract. 388 F.Supp.2d at 1349. The Eleventh Circuit affirmed this ruling finding that the plaintiff's tort claims were not extraneous to the plaintiff's breach of contract claim. 178 Fed.Appx. at 863. Similarly, in *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.,* 208 F.Supp.2d 1310, 1318–19 (S.D.Fla.2002), the plaintiff alleged that the defendant fraudulently induced it to enter into a contract and confidentiality agreement when the defendant never intended to abide by the terms of the confidentiality agreement. In granting the defendant's motion to dismiss the fraudulent inducement claim, this Court held that the economic loss rule barred the plaintiff's claim because the pre-contract statements about which the plaintiff complained "constitute[d] the heart of the breach of contract claims". *Id.* at 1319. *Accord Rosa v. Amoco Oil Co.,* 262 F.Supp.2d 1364, 1366–68 (S.D.Fla.2003) (the economic loss doctrine barred a cause of action for fraudulent inducement to enter into a franchise contract based on alleged oral misrepresentations about the term of the contract because the written contract stated the

term of the contract, and, thus, the plaintiff could only bring a breach of contract claim because the alleged fraudulent misrepresentation was the same as the alleged breach of contract). The finding is also supported by the decisions of Florida courts. *See Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So.2d 74, 77 (Fla.3d Dist.Ct.App.1997) ("where the only alleged misrepresentation concerns the heart of the parties' agreement, simply applying the label of 'fraudulent inducement' to a cause of action will not suffice to subvert the sound policy rationales underlying the economic loss doctrine").

Moreover, insofar as the facts upon which Topp relies appear to show that the complained-of actions began after the beginning of the parties' alleged contractual relationship, Topp is alleging fraud in the performance of the contract, which is also barred by the economic loss rule. *See Hotels of Key Largo, Inc. v. RHI Hotels,* *Inc.*, 694 So.2d at 78 ("misrepresentations relating to the breaching party's performance of a contract do not give rise to an independent cause of action in tort, because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement").[19]

The undersigned also finds no support for Topp's claim that Texas law should apply to Count III. While Texas law applies to the September 12, 2003 contract, Topp has provided no reason that Texas law should apply to an alleged fraud beginning in 1996. In any event, even Texas law recognizes that Topp could not assert a fraudulent inducement claim in the absence of an enforceable contract. *See R.E. Haase v. Glazner*, 62 S.W.3d 795 (Tex. 2001) (the plaintiff, a franchise applicant, could not maintain claim for fraudulent inducement against the defendant, an existing franchisee, where the contract was unenforceable).[20]

**19.** At the November 28, 2006 hearing, counsel for Topp conceded that Uniden's motion to dismiss Count III of the Complaint for failure to plead fraud without specificity should have been granted (DE # 226 at 66–77). Topp's counsel then made an *ore tenus* motion to amend the Amended Complaint to include specific allegations regarding Uniden's agreements with AVS and Wal–Mart regarding returns of B–Stock, and Uniden's alleged skimming of B–Stock, stating that the facts underlying these allegations were not discovered until September 2006 (DE # 226 at 77–78). However, Topp did not move to amend until the summary judgment argument, more than two months later. Thus, the undersigned declines to consider Topp's *ore tenus* motion to amend as untimely and for failure to provide a proposed amended complaint as required by Local Rule 15.1. *See Florida Evergreen Foliage v. E.I. Du Pont De Nemours & Co.*, 470 F.3d 1036, 1041–42 (11th Cir.2006) (the district court did not abuse its discretion in denying Plaintiff's motions to amend which were filed after the district court: denied a motion to dismiss; granted judgment on the pleadings as to one party; certified questions to the Supreme Courts of Florida and Delaware; and certified its judgment on the pleadings for interlocutory review by the Eleventh Circuit.).

Thus, Topp cannot recover on these fraud claims which it did not plead in the Amended Complaint. *Cf. Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp.*, 537 So.2d 561 (reversing judgment for the plaintiff based on an unpleaded claim); *Michael A. Bloom, P.A. v. Dorta–Duque*, 743 So.2d 1202, 1203 (finding "well settled that a defendant cannot be found liable under a theory that was not specifically pled").

**20.** In light of the above recommendation that summary judgment be granted on Count III, the undersigned will not reach Uniden America's alternative theory that it is not liable for the damages allegedly suffered by Topp due to 1) the loss of the Mexico business; 2) the loss of Topp's entire investment in Mexico; 3) the return of master unopened cartons; and 4) Uniden America's failure to maximize returns for delivery to Topp (DE # 102 at 29–33).

### D. *Uniden America's Motion To Dismiss Should Be Denied As Moot*

At the hearing, the parties agreed that if summary judgment was granted, the motion to dismiss would become moot. Therefore, in light of this Court's recommendation that Uniden America's motion for summary judgment be granted, it is also recommended that Uniden America's motion to dismiss the amended complaint be denied as moot.

### VI. *Conclusion*

After a careful review of the record, and for the reasons stated above, it is hereby

**RECOMMENDED** that Defendant Uniden America's Motion For Summary Judgment (DE # 101, filed 8/25/06), be **GRANTED** and that Defendant Uniden America's Motion To Dismiss the Amended Complaint (DE ## 58, 59, filed 6/8/06), be **DENIED AS MOOT**.

The parties will have ten days from the date of service of this Order within which to file written objections, if any, for consideration by the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745 (11th Cir.), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988); *RTC v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993).